FOURTH DIVISION

  June 5, 2003

No. 1-02-2475

SHELDON WERNIKOFF, Indiv. and on Behalf of ) Appeal from the

Those Similarly Situated, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, ) 

)

) No. 02 CH 2333

) 

RCN TELECOM SERVICES OF ILLINOIS, INC., )

and RCN CORPORATION, ) Honorable

) Patrick E. McGann,

Defendants-Appellants. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Sheldon Wernikoff, filed a three-count class-action complaint against the defendants RCN Telecom Services and RCN Corporation (collectively, defendants or RCN).  Defendants filed a motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2000)), on the grounds that exclusive subject matter jurisdiction lay with the Illinois Commerce Commission (the Commission) because plaintiff's claim was actually one for reparations under sections 9-250 and 9-252.1 of the Public Utilities Act (Act) (220 ILCS 5/9-250, 252.1 (West 2000)).  Plaintiff filed a response, asserting that the Commission did not have jurisdiction to decide the complaint's allegations.  Ultimately, the court denied the defendants' motion but decided, 
sua sponte
, that the issue was appropriate for an immediate appeal under Supreme Court Rule 308  (155 Ill. 2d R. 308).  Thereafter, the trial court entered an order certifying the following question for appeal:  
"Whether the Illinois Commerce Commission maintains exclusive jurisdiction over claims for reparations by customers of telecommunications carriers that provide competitive telecommunications services[.]"  On September 30, 2002, we granted defendants' application for leave to appeal under Supreme Court Rule 308.
  
For the reasons that follow, we answer that certified question in the negative.

Defendants offer competitive telephone, cable television, and high speed Internet services across the country, including markets in Washington, D.C., Boston, New York, Philadelphia, San Francisco, and Chicago.  In Illinois, the RCN is considered a "telecommunications carrier," as defined in the Act, and has been granted a certificate of service authority by the Commission according to the Act.  Accordingly, the rates, terms and conditions governing RCN's provision of telecommunications services to its customers in Illinois are contained in tariffs filed by RCN with the Commission. 

This appeal arises from a complaint filed January 31, 2002, regarding overcharges with RCN's local telephone service.  Specifically, the plaintiff alleges that the defendants charged higher rates than those listed with the Commission in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 
et seq
. (West 2000)) (count I); breach of contract (count II); and unjust enrichment (count III).  On a somewhat different note, the plaintiff also alleges overcharging for state and local taxes.  In the end, the complaint, which was brought individually and on behalf of a class of similarly situated RCN customers, sought damages, an injunction against further unlawful conduct, and an award of attorneys fees and expenses.

On May 2, 2002, RCN filed a section 2-619 motion to dismiss.  It argued that exclusive subject matter jurisdiction lay with the Commission because, despite its appearance, plaintiff's claim was actually one for reparations under sections 9-250 and 9-252.1 of the Act.  And because this court has determined that the Commission has exclusive jurisdiction over reparations claims brought under the Act, plaintiff's complaint was improperly filed with the circuit court of Cook County.

On June 10, 2002, the plaintiff filed a response to defendants' motion, asserting that the Commission did not have 
any
 jurisdiction to decide the allegations in the complaint because telecommunications consumers simply cannot bring a claim of excess rates before the Commission.  After the trial court heard arguments on the motion on July 14, 2002, it denied the motion.  Nevertheless, the court admitted that it was an extremely close question as to whether the legislature, in passing the Universal Telephone Service Protection Law of 1985 (Telecommunications Article) (220 ILCS 5/13-101 
et seq.
 (West 2000)), intended to retain the Commission's exclusive jurisdiction over consumer complaints regarding the rates, terms, and condition of services as provided by telecommunications companies such as RCN.  As such, it entered an order certifying the question for appeal.

In reaching its decision, the court found:

"In this court's opinion, there is one issue *** that decides the case.  And that is the answer to the inquiry of whether by creating this new statutory scheme the legislature was retaining the established principle that review of billing practices was peculiarly within the province of the Illinois Commerce Commission, as the courts of Illinois have uniformly decided."

The court also found that "this case is solely about reparations for overcharges, overcharges in rates for certain billing items, improper calculation of taxes, [and] charges for items not disclosed but found in the tariff."  In addition, the court found that "the focus for the court in these cases is not on the name attached to the remedy or the type of the remedy but the essence of the claim."

Since its inception in 1921 through 1985, the Act defined "public utilities" as companies that provided heat, cold, power, electricity, water, light, sewage disposal, gas, or "the transmission of telegraph or telephone messages."  Ill. Rev. Stat. 1983, ch. 111 2/3, par. 10.3.   During the time the statute was enacted, all of those were services traditionally provided by monopolistic entities, and the Act empowered the Commission to regulate almost every aspect of the companies providing those services.  Therefore, as RCN admits, prior to 1985, the Act empowered the Commission with complete control over the prices these entities could charge for their services.  Moreover, it provided a specific provision that addressed the situation when a utility was alleged to be charging more than its stated rates, and the courts uniformly held that the statutory claim under the Act provided the exclusive remedy for such claims.

In the early 1980s, however, a competitive market developed for certain telephone services, signaling to the General Assembly that it needed to change the regulatory function of the Commission.  Accordingly, the General Assembly passed the Telecommunications Article of 1985, which substituted competition for regulation where there was a competitive market for telecommunications services.  In fact, the 1985 Telecommunications Article stated the public policy of Illinois as:

"[C]onsistent with the protection of consumers of telecommunications services and the furtherance of other public interest goals, competition should be permitted to function as a substitute for certain aspects of regulation in determining the variety, quality and price of telecommunications services and that the economic burdens of regulation should be reduced to the extent possible consistent with protection of the public interest[.]"  Ill. Rev. Stat. 1985, ch. 111 2/3, par. 13-103(b).

The Telecommunications Article effectuated its changes by first removing telecommunications companies from the Act's definition of "public utility."  Compare Ill. Rev. Stat. 1983, ch. 111 2/3, par. 10.3, with Ill. Rev. Stat. 1985, ch. 111 2/3, par. 3-105 (now 220 ILCS 5/3-105 (West 2000)).  This meant that the Act was no longer generally applicable to telephone companies.  However, the General Assembly did not get rid of all regulation of telephone companies, and it selectively chose which provisions of the Act would still be applicable, as noted in section 13-101 (220 ILCS 5/13-101 (West 2000)).  

The legislature also split telephone companies into two categories: competitive and noncompetitive.  Accordingly, section 13-101 has two lists: one list of provisions applicable to noncompetitive telephone companies and one list for competitive telephone companies.  For noncompetitive companies, section 13-101 makes almost all of the Act applicable, basically leaving the regulatory scheme unchanged for such companies.  However, for competitive companies, section 13-101 rendered significant portions of the Act inapplicable.  Put another way, the deregulation of competitive telephone companies essentially was accomplished by not making many sections of the Act applicable to such companies.

The largest omission was that nearly all of Article IX of the Act, which deals with rates, was not made applicable.  For example, section 9-101 (220 ILCS 5/9-101 (West 2000)), which empowers the Commission to determine whether a utility's rates are "just and reasonable," does 
not
 apply to competitive telephone companies.  Likewise, section 9-201 (220 ILCS 5/9-201 (West 2000)), which requires Commission approval for all rate changes, is also inapplicable to competitive phone companies.  By not applying provisions such as these to competitive telephone companies, the legislature took away the Commission's power to regulate the rates of those entities.  Thus, a competitive phone company may charge whatever rate it chooses, subject only to the requirement that it files that rate with the Commission.  220 ILCS 5/13-501 (West 2000).  

In addition, subsequent amendments to the sections of the Act that apply to telephone companies seem to have expanded the General Assembly's policy of deregulating competitive telephone companies.  For example, the policy statement in the 1985 Telecommunications Article stated that "competition should be permitted to function as a substitute for 
certain
 aspects of regulation."  (Emphasis added.)  Ill. Rev. Stat. 1985, ch. 111 2/3, par. 13-103 (b).  However, the policy statement adopted in 1997 appears to be much more expansive:

"[C]onsistent with the protection of consumers of telecommunications services and the furtherance of other public interest goals, competition in 
all
 telecommunications service markets should be pursued as a substitute for regulation in determining the variety, quality and price of telecommunications services and that the economic burdens of regulation should be reduced to the extent possible consistent with the furtherance of market competition and protection of the public interest[.]"  (Emphasis added.)  220 ILCS 5/13-103(b) (West 2000).

Accordingly, the only issue in this case is to determine whether the General Assembly's rate deregulation impacted the Commission's jurisdiction over consumer claims relating to the rates charged by competitive telephone companies.  The trial court, indeed, found that the deregulation legislation of 1985 removed the review of billing matters for competitive companies from the Commission's jurisdiction:

"To me, the second sentence in 13-101 is key to the court's inquiry.  Did the legislature intentionally omit the language, the sections of this act pertaining to public utilities, public utility rates and services and regulations thereof in discussing their application to competitive telecommunications services[?]  They clearly omitted this language.  I must conclude that the legislature intended what they meant."

By way of background, we note that the Act is quite explicit on the scope of consumer complaints the Commission has jurisdiction to hear:

"Complaint may be made by the Commission, of its own motion or by any person or corporation *** setting forth any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of this Act, or of any order or rule of the Commission."  220 ILCS 5/10-108 (West 2000).

Thus, consumers can file complaints with the Commission only if there is a violation of the Act or of an order or rule of the Commission.  However, the Commission has no jurisdiction over consumer complaints that involve common law claims of violations of statutes other than the Act.

Interestingly, therefore, the general rule is that the Commission's jurisdiction is non-exclusive.  In fact, section 5-201 provides, in pertinent part, that consumers can bring damage suits against utilities in court, even when their claims involve violations of the Act:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment.  
An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation
."  (Emphasis added.)  220 ILCS 5/5-201 (West 2000).

While section 5-201 is the only provision in the Act that speaks to jurisdiction, it says nothing about the Commission's exclusive jurisdiction, which is a court-made doctrine.  Essentially, the doctrine developed because Illinois courts felt that if the Act provided a specific cause of action and remedy for rate reparation claims, the statutory claim superseded any common law claim based on the same facts.  And since the statutory claim had to be brought before the Commission, the Commission had exclusive jurisdiction over that matter.  See 
Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm'n
, 304 Ill. 312, 317 (1922):

"The evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such reparation until the commission has heard a claim therefor. *** Moreover, it cannot be doubted that the Public Utilities [A]ct supercedes the common law liability of the carrier so far as rates and unreasonable discrimination are concerned."

Accord 
Cummings v. Commonwealth Edison Co.
, 64 Ill. App. 2d 320, 323-24 (1965) ("It is well established that the common law right to recover reparations for unreasonable charges by public utilities has been superseded by the Public Utilities Act").  Accordingly, the decisive issue in this case is, simply, whether the plaintiff has a reparations claim under the Act.

Defendants' only argument on appeal is that the Commission maintains exclusive jurisdiction over claims for reparations by customers of telecommunications carriers that provide competitive telecommunications services based upon: (1) the plain language of the Act; (2) the intent of the General Assembly when amending the Act as made evident by statutory construction; and (3) public interest.  As the supreme court has stated:

"The interpretation of a statute is a question of law, subject to 
de novo
 review.  
Yang v. City of Chicago
, 195 Ill. 2d 96, 103 (2001).  The fundamental principle of statutory construction is to determine and give effect to the intent of the legislature.  
In re Estate of Dierkes
, 191 Ill. 2d 326, 331 (2000).  The best means of determining legislative intent is through the statutory language.  
In re Application of the County Collector of Du Page County for Judgment for Delinquent Taxes for the Year 1992
, 181 Ill. 2d 237, 244 (1998).  When the meaning of a statute is not clearly expressed in the statutory language, a court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy.  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 81 (1994).  When the language of an enactment is clear, it will be given effect without resort to other interpretative aids.  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 504 (2000);  
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184-85 (1999);  
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 375-76 (1997), quoting 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 389 (1996)."  
Petersen v. Wallach
, 198 Ill. 2d 439, 444-45 (2002).

In other words, if the statutory language is unambiguous, it is inappropriate to resort to other aids of statutory construction in interpreting the statute at issue.  
Page v. Hibbard
, 119 Ill. 2d 41, 46 (1987).  Statutory language will only be considered to be ambiguous when it " is capable of being understood by reasonably well-informed persons in two or more different senses."  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 18 (1996).

RCN first argues that the plain language of the Act demonstrates that the General Assembly intended for the Commission to retain exclusive jurisdiction to address the claims presented in this appeal.  For this, it notes that while section 13-101 of the Act renders most provisions of the Act inapplicable to providers of competitive telecommunications services, section 13-101 explicitly stated that sections 9-250 and 9-252.1 were to apply.  In turn, RCN argues that, "[a]s a result of the full application of these provisions, the Commission retains exclusive jurisdiction over the types of claims raised by the plaintiff."

Section 9-250 of the Act provides in pertinent part:

"Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that the rates or other charges, or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, or that the rules, regulations, contracts, or practices or any of them, affecting such rates or other charges, or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any way in violation of any provisions of law, or that such rates or other charges or classifications are insufficient, the Commission shall determine the just, reasonable or sufficient rates or other charges, classifications, rules, regulations, contracts or practices to be thereafter observed and in force, and shall fix the same by order as hereinafter provided."  220 ILCS 5/9-250 (West 2000).

Because section 9-250 gives the Commission the authority to address complaints regarding the charges or practices of providers of competitive telecommunications services, RCN argues that the Commission has retained exclusive authority to address the plaintiff's complaint regarding reparations for overcharges, overcharges in rates for certain billing times, and allegations regarding the imposition of charges that were not included in the defendants' filed rates.

Thereafter, section 9-252.1 provides:

"When a customer pays a bill as submitted by a public utility and the billing is later found to be incorrect due to an error either in charging more than the published rate or in measuring the quantity or volume of service provided, the utility shall refund the overcharge with interest from the date of overpayment at the legal rate or at a rate prescribed by rule of the Commission.  Refunds and interest for such overcharges may be paid by the utility without the need for a hearing and order of the Commission.  Any complaint relating to an incorrect billing must be filed with the Commission no more than 2 years after the date the customer first has knowledge of the incorrect billing."  220 ILCS 5/9-252.1 (West 2000).

Likewise, RCN notes, section 9-252.1 of the Act provides a remedy to a consumer in the event that a provider of competitive telecommunications overcharges its customer "due to an error either in charging more than the published rate or in measuring the quantity or volume of service provided."  220 ILCS 5/9-252.1 (West 2000).  Therefore, RCN argues, the Commission also has the exclusive authority to address the plaintiff's complaint regarding the defendants' billing practices where the plaintiff alleged that he was improperly billed for calls at different times of the day and that discounts, taxes, and other charges were improperly measured, calculated, or added to its bills.

Ultimately, RCN concludes that since sections 9-250 and 9-252.1 of the Act apply to providers of competitive telecommunications services, and since the trial court properly concluded that plaintiff's claim is essentially a claim for reparations under the Act, the Commission must necessarily retain its exclusive jurisdiction over plaintiff's claim.

Thereafter, the defendants preemptively address concerns regarding the General Assembly's choice not to apply sections 9-240 and 9-243 of the Act (220 ILCS 5/9-240, 9-243 (West 2000)) to competitive telecommunications service prices.  Section 9-240 provides in pertinent part:

"Except as in this Act otherwise provided, no public utility shall charge, demand, collect or receive a greater or less or different compensation for any product, or commodity furnished or to be furnished, or for any service rendered or to be rendered, than the rates or other charges applicable to such product or commodity or service as specified in its schedules on file and in effect at the time, except as provided in Section 9-104, nor shall any such public utility refund or remit, directly or indirectly, in any manner or by any device, any portion of the rates or other charges so specified, nor extend to any corporation or person any form of contract or agreement or any rule or regulation or any facility or privilege except such as are regularly and uniformly extended to all corporations and persons."  220 ILCS 5/9-240 (West 2000).

Section 9-243 states:

"No public utility, or any officer or agent thereof, or any person acting for or employed by it, shall directly or indirectly, by any device or means whatsoever, suffer or permit any corporation or person to obtain any service, commodity, or product at less than the rate or other charge then established and in force as shown by the schedules filed and in effect at the time.  No person or corporation shall, directly or indirectly, by any device or means whatsoever, whether with or without the consent or connivance of a public utility or any of its officers, or employees, seek to obtain or obtain any service, commodity, or product at less than the rate or other charge then established and in force therefor.  If prior to June 30, 1913, any real estate or other tangible property shall have been sold or transferred to any public utility or public service corporation, or, if before that date, any obligation of any public utility or public service corporation created in consideration of the transfer to it of any real estate or other tangible property, shall have been released or cancelled, upon consideration in whole or in part of an agreement by such public utility or public service corporation expressed in writing to render any service, or furnish any commodity or product in the future to the party or parties making such conveyance or transfer or owning such obligation, nothing in this Act contained shall be construed to in any way affect such agreement or to prevent the performance or enforcement thereof according to its terms, or to authorize the Commission to interfere with such performance or enforcement."  220 ILCS 5/9-243 (West 2000).

RCN notes that prior to the enactment of the Telecommunications Article, telecommunications providers were prohibited from changing their rates without providing notice to and receiving approval from the Commission.  As noted, however, with the enactment of the Telecommunications Article, the General Assembly determined that providers of competitive telecommunications services need not submit increases or decreases to the Commission for approval, as the market would eventually bear out the appropriateness of those prices.  Thus, RCN argues that in looking at both sections 9-240 and 9-243 –both of which apply to the rates of carriers– it makes sense that neither section would apply.  Moreover, RCN notes, if the General Assembly had intended to totally restrict the Commission's authority to address complaints against providers of competitive telecommunications services, the General Assembly similarly would have made sections 9-250 and 9-252.1 of the Act inapplicable to providers of competitive telecommunications service.

To summarize, RCN asserts that in looking at the plain language of the Telecommunications Article, this court should determine that nothing in section 13-101 of the Act removes the exclusive jurisdiction of the Commission to address complaints regarding reparation from customers of providers of competitive telecommunication carriers.  Consequently, RCN prays for a reversal of the trial court's decision and a grant of the defendants' motion to dismiss.

In response to RCN's arguments concerning section 9-250, plaintiff asserts that RCN's analysis misses the fact that this section only describes what remedies the Commission can provide after a hearing or "upon complaint."  Thus, plaintiff argues, section 9-250 is only triggered if the consumer has filed a complaint.  And in order to file a complaint, the consumer must allege a violation of the Act.  See 220 ILCS 5/10-108 (West 2000).  However, because section 9-240 does not apply to competitive telephone companies, there can be no violation of the Act for the consumers to allege if they are charged more than the contractually permitted rates.  Moreover, plaintiff asserts, the plain language of section 9-250 shows that it does not create a statutory cause of action because it does not make any conduct unlawful.  Rather, it only defines the remedies the Commission can order 
if
 there has been a complaint showing a violation of the Act.  In short, plaintiff claims that the Act's statutory scheme is that section 9-240 and other similar sections proscribe certain conduct, and that section 9-250 and other sections similar to it provide the remedies available to the Commission if a complaint has demonstrated a violation of one of the other sections.

Plaintiff also answers RCN's argument that the legislature intentionally retained the Commission's exclusive jurisdiction by leaving section 9-250 available to competitive telecommunications companies.  Plaintiff asserts that "[t]he answer lies in the fact that section 9-250 addresses, in addition to certain rate matters (which are still relevant as to all other utilities), claims involving issues of classification: ‛Wherever the Commission, after a hearing *** in connection therewith *** rates or other charges 
or
 
classifications
 ***.'  220 ILCS 5/9-250 (West 2000)."  

As recognized by the defendants, the legislature created a different regulatory schemes for competitive and noncompetitive telephone companies, 
i.e.
, the ability to be "classified" as competitive means that a company no longer needs rate approval from the Commission.  And while telephone companies can make their own decisions on classification, the Commission ultimately determines whether such classifications are correct.  220 ILCS 5/13-502 (West 2000).  Moreover, a finding by the Commission that a company has incorrectly classified itself could result in a refund of overcharges to customers.  See 220 ILCS 5/13-502(e) (West 2000).  Therefore, plaintiff concludes, the legislature had to make section 9-250 applicable to competitive telecommunications companies, at the very least, to insure that the Commission could order the appropriate remedy in a wrongful classification case.  For example, in 
Illinois Bell Telephone Co. v. Illinois Commerce Comm'n
, 282 Ill. App. 3d 672 (1996), this court affirmed the Commission's order providing a refund where Ameritech had raised its rates after improperly classifying some of its services as competitive).

Likewise, plaintiff continues, section 9-252.1 also does not create a cause of action, as a customer who is a victim of over charging cannot file a complaint alleging a violation of section 9-252.1.  Rather, section 9-252.1 deals with the ability of a utility to make a voluntary error correcting refund without the need for a hearing or order of the Commission.  220 ILCS 5/9-252.1 (West 2000).  According to the language of that section, it specifically addresses the limited situation in which a customer has paid a bill that the utility "later found to be incorrect."  Under those circumstances, the utility is then to refund the overcharge with interest, and there is no need for a hearing or order of the Commission to authorize such a refund.  However, plaintiff argues, section 9-252.1 has no application to a dispute between a customer and the company over whether an overcharge has occurred.  Therefore, plaintiff concludes, "it defies logic to argue, as RCN does, that the Commission obtains jurisdiction over certain claims under a statutory provision that specifically addresses what actions can be taken "without the need for a hearing and order of the Commission."

Initially, we think that the only way the plaintiff could have ever pursued a reparations claim against a competitive telecommunications company under the Act would have been through section 9-240, as that section specifically proscribes:

"[C]harg[ing], demand[ing], collect[ing] or receiv[ing] a greater or less or different compensation for any product, or commodity furnished or to be furnished, or for any service rendered or to be rendered, than the rates or other charges applicable to such product or commodity or service as specified in its schedules on file and in effect at the time***."  220 ILCS 5/9-240 (West 2000).

However, in specifically excluding that section from applying to competitive telecommunications companies, we think that the legislature intended to prevent claims of overcharging against competitive telecommunications companies from remaining exclusively before the Commission.  Otherwise, it would have simply made section 9-240 applicable to those companies.

While the defendants suggest that the deregulation of the industry necessarily prompted the legislature's decision to render sections 9-240 and 9-243 inapplicable to competitive companies (as both sections deal with the Commission's supervision of rates), the fact also remains that section 9-240 still proscribes a utility's charging more than its filed rates.  Even though competitive companies no longer need to obtain Commission approval for their rates, they still potentially could be subject to section 9-240's requirement that the companies must still charge what they file.  Therefore, we think that if the legislature wanted the Commission to handle rate claims involving competitive carriers, it logically would have made section 9-240 applicable to them, as that section addresses the only remaining restriction on what they can charge.  Because the legislature did not do so, its intent seems clear: to remove all rate claims involving rate claims involving competitive companies from the Commission's jurisdiction.  As the trial court held, the legislature "clearly omitted" section 9-240 from section 13-101's list of sections applicable to competitive telecommunications companies and one "must conclude that the legislature intended what they meant."

Based upon the plain language of sections 9-250 and 9-252.1, we also agree with the plaintiff that neither section provides a potential plaintiff with a cause of action for a reparations claim under the Act.  While RCN claims that section 9-250 provides the Commission with the ability to "entertain complaints regarding the ‛rates, contracts, or practices' of a provider of competitive telecommunication services," the fact remains that stated purpose of section 9-250 is to permit the Commission to determine "the just, reasonable or sufficient rates or other charges, classifications, rules, regulations, contracts or practices to be thereafter observed and in force," and that the Commission may do so only "after a hearing had upon its own motion or 
upon
 
complaint
."  (Emphasis added.)  220 ILCS 5/9-250 (West 2000).  Similarly, the stated purpose of section 9-252.1 is to allow a utility to make a refund when it has "later found [a billing] to be incorrect."  220 ILCS 5/9-252.1 (West 2000).  Both sections, therefore, serve only to provide the remedies available to the Commission and a public utility, respectively, if a utility's charged rates are demonstrated to be incorrect or the utility otherwise violates the law.  Accordingly, even if we were to agree with the trial court's determination that "this case is solely about reparations," plaintiff is still unable to proceed under either section 9-250 or 9-252.1 as a way of establishing a cause of action under the Act.

Moreover, as plaintiff suggests, even if we were to read RCN's interpretation of sections 9-250 and 9-252.1 as also making it a violation of the Act to charge more than a utility's contractual rate, those sections would duplicate section 9-240, thereby rendering it superfluous.  Such an interpretation would violate the basic rule of construction that a statute should be read so as to give meaning to all of its parts.  See 
Sylvester v. Industrial Comm'n
, 197 Ill. 2d 225, 232 (2001) ("We must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous").

Bolstering our determination is the language from section 5-201, which states that "[a]n action to recover for such loss, damage or injury [caused by a public utility's ‛prohibited, forbidden' or ‛unlawful' act] may be brought in the circuit court by any person or corporation."  220 ILCS 5/5-201 (West 2000).  RCN suggests that section 5-201 is inapplicable to cases, such as here, where a plaintiff is seeking reparations, as those actions belong under the exclusive jurisdiction of the Commission.  As previously noted, however, a plaintiff seeking reparations against a competitive telecommunications company has no statutory cause of action under the Act.  And because nothing in section 5-201 indicates that the legislature intended to exclude reparations from the circuit court's jurisdiction over causes of actions involving a customer's "loss," we find that all claims of loss against competitive telecommunications companies –including reparations– may properly be brought before the circuit court.

Because we find the language of the relevant sections of the Act to be clear, we are to give it effect without resort to other interpretative aids.  
Wallach
, 198 Ill. 2d at 444-45.  Accordingly, we need not address defendants' additional arguments that the statutory construction of the Act's amendments, as well as the concept of the general public interest, evidence the intent of the General Assembly. 

For the reasons stated above, we answer the trial court's certified 
question in the negative. 

Certified question answered.

HARTMAN and KARNEZIS, JJ., concur.