SIXTH DIVISION
February 26, 2010

No. 1-09-0849

| | | |
|---|---|---|
| FRANCES SHEFFLER, MARK RESNIK, | ) | Appeal from the |
| and DEBRA L. SLOAN, Individually and on Behalf of | ) | Circuit Court of |
| JASON SLOAN, on Behalf of Themselves and All Others | ) | Cook County. |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | No. 07 CH 23615 |
| v. | ) | |
| | ) | |
| COMMONWEALTH EDISON COMPANY, | ) | |
| an Illinois Corporation, | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiffs, Frances Sheffler, Mark Resnik, and Debra Sloan, individually and on

behalf of Jason Sloan, appeal the dismissal of their complaint, framed as a class action,

against defendant, Commonwealth Edison Company (ComEd), a public utility, and the

trial court's denial of their motion for leave to file a fourth amended complaint, also

framed as a class action.

On August 23, 2007, the Chicago area was affected by severe storm systems,

resulting in the loss of electrical power to many ComEd customers, including plaintiffs.

Following the storms, plaintiffs filed this lawsuit seeking legal and equitable relief

against ComEd. The operative third amended complaint, which was dismissed in its

entirety with prejudice, contained five counts as a class action. Count I, entitled

"Negligence," alleges that ComEd negligently failed to prevent the power outages, failed

to provide adequate warning to plaintiffs and those similarly situated prior to the power

outages, and failed to timely restore power to plaintiffs and the purported class following the power outages. Count II, entitled "Public Utilities Act," alleges the existence of a statutory duty and a violation of that duty. Specifically, count II of plaintiffs' complaint alleges that ComEd violated sections 8-101, 8-401, and 16-125(e) and (f) of the Illinois Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq*. (West 2006)), as well as Illinois Commerce Commission Rule 411.100. Count III, entitled "Breach of Contract Implied in Law/Fact," alleges that ComEd accepted payment for and impliedly agreed to provide plaintiffs and the purported class with "adequate, efficient and reliable electric services," and failed to do so. Count IV, entitled "Injunction," sought to enjoin ComEd "from its practice of refusing to have in place infrastructure and planning, that, by design, cannot prevent controllable interruptions of power," and "cannot permit ComEd to timely respond" to a power interruption. Count V, entitled "Illinois Consumer Fraud Act," alleges that ComEd engaged in unfair business practices by "pay[ing] its managers and employees bonuses or compensation to spend less on repair for the benefit of [ComEd's] Illinois customers."

The complaint's prayer for relief requests class-action certification for "[a]ny and all persons and entities located in the State of Illinois that suffered damages as a result of electric power outages or interruptions for August 23, 2007, through the date of judgment." The complaint alleges that plaintiffs and purported class members suffered "personal injur[ies], property damage and other financial damages, including loss of use of property, and costs of repair or replacement of property as a result of the sudden and

2

dangerous power outages or interruptions." The complaint further alleges that plaintiffs "sustained at least the following damages as a result of ComEd's acts and conduct: spoiled food, water damage to walls, furniture, fixtures, appliances, furnace and water heaters, and medical and electrical equipment." As relief, the complaint seeks legal and injunctive relief, attorney fees and costs, and any other relief the circuit court finds proper. As part of the injunctive relief sought, the complaint seeks to "enjoin[] ComEd and its agents, employees, and all persons acting in concert or cooperation with [ComEd] *** from its practice of refusing to have in place infrastructure and planning, that, by design, cannot prevent controllable interruptions of power," and "cannot permit ComEd to timely respond to a power interruption."

ComEd filed a motion under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)), to dismiss plaintiffs' complaint for failure to state a cause of action. Relying on *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999), the trial court dismissed the complaint, with prejudice, concluding that the complaint failed to sufficiently state a cause of action. In *Spagnolo*, our Illinois Supreme Court affirmed the dismissal of a complaint seeking a sweeping mandatory injunction to correct allegedly deplorable conditions at a school, finding that the "plaintiffs allege merely that the defendants have violated 'common law duties,' without specifying what those duties are or what acts or omissions of the defendants breached those duties." *Spagnolo*, 186 Ill. 2d at 233. Further, the court found that the issue raised in the plaintiff's complaint was a nonjusticiable political question and the redress sought by the plaintiffs was appropriately

3

addressed by the Illinois legislature. *Spagnolo*, 186 Ill. 2d at 205. Likening the current case to *Spagnolo*, the trial court specifically found that the complaint in the case at bar sought relief "for systematic defects in the provision of the electrical services or in the repair of those services once an outage occurs," which the trial court determined were of "the type of broad-based allegations and claims that cannot survive as a matter of law." The trial court concluded that "the bottom line is that *** plaintiffs' allegations go to the way [ComEd] provides services and the adequacy of its response when those services fail," and that "the law [does not] provide relief for the kinds of claims that are stated" in plaintiffs' complaint.

Plaintiffs sought leave to file a fourth amended complaint to remove their allegations seeking injunctive and declaratory relief, and to seek only a damages claim, which the trial court denied. Plaintiffs timely appeal the dismissal of their class-action complaint and the denial of their motion for leave to file a fourth amended class-action complaint. We affirm.

## BACKGROUND

Plaintiff Sheffler is a resident of Glenview, Illinois, plaintiff Resnik of Wilmette, Illinois, and plaintiff Debra Sloan, who sues individually and on behalf of her son, Jason Sloan, of Des Plaines, Illinois. Plaintiffs' complaint alleges that "on or about August 23, 2007, and thereafter, ComEd failed to provide, and timely restore power to the plaintiffs and other customers in Illinois including Cook County." The complaint further alleges that "the storm of August 2007 precipitated an interruption in excess of 30,000 ComEd

customers, including plaintiffs and ComEd did not restore their power within 24 hours." The complaint seeks the appointment of plaintiffs as representatives of a statewide class of similarly situated ComEd customers.

The complaint contains additional allegations concerning the Sloan plaintiffs. Jason Sloan requires a ventilator to breathe and has life-support equipment at home, where he lives with his mother Debra Sloan. The Sloan residence lost power during the August 23, 2007, storm. The complaint alleges that Debra Sloan telephoned a ComEd customer service representative for assistance and that she received "curt treatment" on the telephone. As a result of the power outage, Debra connected Jason's ventilator to a "temporary generator," contained within their residence's basement. Shortly after connecting Jason's ventilator to the "temporary generator," the Sloan's basement flooded and Debra Sloan's back-up efforts to restore power to Jason's ventilator were unsuccessful. Unable to learn when her home's electric power would be restored, Debra moved her son to an undisclosed location that apparently had electrical power.

The Sloan residence appeared on a list known as the "Life Support Registry" (registry) that ComEd maintains under the Illinois Public Utilities Act (220 ILCS 5/8-204 (West 2006)), due to the presence of life-support equipment within the residence. Section 8-204 of the Act requires "[e]very public utility company which furnishes electricity to residential customers [to] *** maintain a registry of those individuals who are dependent on an electrically operated respirator, dialysis machine or any other electrically operated life-support equipment." 220 ILCS 5/8-204 (West 2006). The

complaint alleges that ComEd refused to use the registry to assign the Sloan residence priority in restoring electrical power. Further, the complaint alleges that "ComEd rushed to restore power of certain VIPs," rather than give priority to those customers on the life-support equipment registry.

As noted, the trial court proceedings in the case at bar involved four filed complaints and one proposed fourth amended complaint. The procedural history leading to the operative third amended complaint and the proposed fourth amended complaint is as follows.

On August 28, 2007, five days after the August 23, 2007, storms, plaintiffs Sheffler and Resnik filed a putative class-action complaint against ComEd alleging a violation of the Act and breach of an "implied contract." Two weeks later, plaintiffs moved for and obtained leave to file an amended complaint.

On September 19, 2007, plaintiffs filed an "amended class action complaint." The amended complaint added the Sloan plaintiffs, repeated the original complaint's counts and added allegations concerning ComEd's life-support equipment registry. The amended complaint sought class-action certification for "[a]ny and all persons registered on [the registry] from August 23, 2007, through the date of judgment," and sought injunctive relief with respect to an unspecified obligation concerning the life-support registry, and a declaratory judgment finding that ComEd should use the registry in assigning priority in restoring power following an outage.

6

The amended complaint alleged that the registry mandated that households appearing on the registry receive priority for power restoration following power outages. Attached to the amended complaint is a June 14, 2007, letter from ComEd addressed to Debra Sloan stating as follows: "The addition of your account to the Life Support Registry *** [d]oes not guarantee uninterrupted electrical services [and] does not provide priority restoration of your electric service when an interruption occurs." The amended complaint sought a temporary restraining order or alternatively a preliminary injunction restraining or directing ComEd:

> "from refusing to respond on a priority or individual basis to restore electric power or to offer assistance to persons registered in their Life Support Registry; to give persons registered in their Life Support Registry priority in restoring power after an outage; to provide persons registered in their Life Support Registry regular and frequent updates and warning as to when it is anticipated that power will be restored, if at all; and/or to clearly and conspicuously inform persons registered in their Life Support Registry what assistance [ComEd] will provide and will not provide in the event of an outage for purposes of restoring electricity."

In opposition to plaintiffs' request for an injunction, ComEd submitted the affidavits of Timothy McGuire, vice president of construction and maintenance for ComEd, and Phyllis Batson, vice president of customer contact for ComEd. The affidavits asserted that the highest priority for restoration of electrical power following a

power outage goes to critical institutions such as hospitals, police and fire departments, and urgent care centers. According to the affidavits, the following priority is given to municipal water pumping facilities, senior citizen facilities, and high-rise buildings. The affidavits asserted that the life-support equipment registry cannot mandate priority in power restoration as persons requiring the use of life-support equipment are distributed throughout ComEd's service territory.

On September 19, 2007, the trial court denied plaintiffs' injunction request. The trial court found that the relief sought was a request for the trial court to assume the role of the Illinois Commerce Commission (Commission or ICC). The trial court stated, "I don't know how I would order ComEd to do that which you propose to do *** I mean, that's what the [Commission] does."

ComEd filed a motion to dismiss plaintiffs' amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)). On November 8, 2007, after hearing argument from all parties, the trial court found that plaintiffs' allegations concerning the life-support equipment registry failed to state a cause of action and dismissed those claims with prejudice. The trial court permitted plaintiffs to include the registry-related allegations in a second amended complaint, but only to preserve those allegations for appellate review.

The trial court dismissed the remainder of plaintiffs' amended complaint without prejudice, finding that plaintiffs had not set forth sufficient facts alleging a specific duty that ComEd breached and that plaintiffs were damaged by any such breach. The trial

court granted plaintiffs leave to file a second amended complaint to correct any defects in their complaint.

Plaintiffs filed their second amended complaint, again framed as a class action, on December 6, 2007, once more seeking class-action certification of a statewide class. In their second amended complaint, the plaintiffs added a new count claiming negligence and realleged the counts claiming ComEd's violation of the Act, ComEd's breach of an implied contract, and the allegations concerning the life-support equipment registry.

ComEd then moved to dismiss plaintiffs' second amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)). On June 16, 2008, the trial court granted ComEd's motion to dismiss, finding that plaintiffs failed to set forth sufficient factual allegations to state a cause of action. The trial court again dismissed the registry-related counts, without leave to replead, but allowed plaintiffs leave to amend the remaining counts.

On August 4, 2008, plaintiffs filed their third amended complaint, again seeking class-action certification for a statewide class of ComEd customers who suffered damages as a result of electrical power outages or interruptions from August 23, 2007, through the date of judgment. As noted, plaintiffs' third amended complaint contains five counts. Count I asserts negligence, count II asserts violation of the Act, count III asserts breach of an implied contract, count IV seeks injunctive relief, and count V asserts violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)).

9

On August 5, 2008, plaintiffs filed a second motion for a emergency temporary restraining order. According to the motion, the Sloan plaintiffs lost power in the evening of August 4, 2008, and in the early morning of August 5, 2008. The plaintiffs sought an order to have the Sloan residence's power immediately restored. The trial court denied plaintiffs' motion for a temporary restraining order, finding that it had no authority to regulate ComEd.

ComEd then filed a combined section 2-619.1 motion to dismiss (735 ILCS 5/2-619.1 (West 2006)), seeking dismissal of plaintiffs' complaint under both section 2-615 and 2-619 of the Code. Section 2-619.1 of the Code provides:

"Motions with respect to pleadings under Section 2-615 [(735 ILCS 5/2-615)], motions for involuntary dismissal or other relief under Section 2-619 [(735 ILCS 5/2-619)], and motions for summary judgment under Section 2-1005 [(735 ILCS 5/2-1005)] may be filed together as a single motion in any combination. A combined motion, however, shall be in parts. Each part shall be limited to and shall specify that it is made under one of [the aforementioned sections]. Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based." 735 ILCS 5/2-619.1 (West 2006).

In its motion, ComEd argued that plaintiffs filed their third amended complaint, which was substantially similar to those already dismissed by the trial court. Further, ComEd

10

argued that plaintiffs sought sweeping relief related to ComEd's operation and that the ICC had exclusive jurisdiction over the regulation of ComEd.

On December 16, 2008, after hearing argument from all parties, the trial court granted ComEd's motion to dismiss plaintiffs' third amended complaint in its entirety with prejudice, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)). The trial court determined:

"There still would have to be some additional factual allegations that would show what actions [ComEd] took or did not take vis-à-vis these individual plaintiffs in order to establish their injury and that there would have to be additional allegations in addition to show that the injuries – what injuries – specific injuries these particular plaintiffs sustained.

* * *

But apart from that *** it seems to the court that what is actually at issue here is that what this lawsuit is about and what the plaintiffs' theory of the case is that they are actually seeking relief based on systematic defects in the provision of the electrical services or repair of those services once an outage occurs. And in the court's view, these are the type of broad-based allegations and claims that can't survive as a matter of law *** I've read the complaint, and I've read it now several times in its prior forms, the allegations at their core are very much like the allegations in the *Lewis E. v. Spagnolo* case.

11

* * *

The complaint is really looking for relief that whether it's characterized as damages relief or there is a count for injunctive and declaratory relief or an action under the Consumer Fraud Act, the bottom line is that the plaintiffs' allegations go to the way [ComEd] provides services and the adequacy of its response when those services fail for whatever multitude of reasons may exist. I don't think the law provides a relief for the kinds of claims stated, therefore, as I have indicated, I think the complaint fails as a matter of law."

Since the trial court dismissed plaintiffs' third amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)), it never reached ComEd's contentions regarding dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2006)); specifically, the trial court never reached ComEd's contention that the Commission, not the trial court, had jurisdiction over plaintiffs' claims.

As noted, plaintiffs sought leave to amend their complaint for the fourth time solely to seek a damages claim. The trial court ordered briefing regarding whether plaintiffs should be afforded leave to amend. Plaintiffs offered their proposed fourth amended complaint on the day of oral argument pertaining to plaintiffs' motion for leave to amend their complaint. The proposed fourth amended complaint contained only one count alleging that ComEd violated section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)). Addressing section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)), the trial

12

court denied plaintiffs' motion for leave to file a fourth amended complaint finding, "[I]n looking at this particular provision (referring to 220 ILCS 5/16-125 (West 2006)), it seems to me clear that what the legislature has done is provide a remedy for broad based power outages sought through the [Commission]."

This timely appeal followed.

ANALYSIS

A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)) is a challenge to the legal sufficiency of the complaint. *Iseberg v. Gross*, 366 Ill. App. 3d 857, 860 (2006). In reviewing the legal sufficiency of the complaint, we regard all well-pled facts as true and draw all reasonable inferences in favor of plaintiffs. *Iseberg*, 366 Ill. App. 3d at 860. We construe the complaint liberally and dismiss only when it appears that plaintiffs cannot recover under any set of facts. *Iseberg*, 366 Ill. App. 3d at 861. For this reason, as a general rule, leave to amend is freely granted. *Fitzgerald v. Chicago Title & Trust Co.*, 72 Ill. 2d 179 (1978). The standard of review from the granting of a section 2-615 motion to dismiss is *de novo*. *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 586 (2004), citing *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563 (2002).

The determination of whether to grant a motion to amend pleadings rests within the discretion of the trial court, and a reviewing court will not reverse a trial court's decision absent an abuse of that discretion. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 467 (2006).

1. The Public Utility Act's Regulatory Scheme

Before proceeding to the parties' arguments on appeal, we summarize the regulatory scheme set forth by the Illinois Public Utilities Act (220 ILCS 5/1-101 *et seq.* (West 2006)). ComEd, being a public utility, is governed by the Act. 220 ILCS 5/3-105(a) (West 2006) (defining "public utility"). Section 1-102 of the Act sets forth the Illinois legislature's "Findings and Intent" in enacting the Act. That section provides:

"The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services at prices which accurately reflect the long-term cost of such services and which are equitable to all citizens. It is therefore declared to be the policy of the State that public utilities shall continue to be regulated effectively and comprehensively. It is further declared that the goals and objectives of such regulation shall be to ensure[:]

(a) Efficiency:

* * *

(b) Environmental Quality:

* * *

(c) Reliability:

* * *

(d) Equity: the fair treatment of consumers and

investors *** ." 220 ILCS 5/1-102 (West 2006).

The Commission was statutorily created to exercise general supervision over all Illinois public utilities in accordance with the provisions of the Act. 220 ILCS 5/2-101 (West 2006); *Alhambra-Grantfork Telephone Co. v. Illinois Commerce Comm'n*, 358 Ill. App. 3d 818, 823 (2005) (Illinois Commerce Commission is a creation of the Illinois legislature and possesses the authority and power necessary to supervise all Illinois public utilities and to administer the regulatory laws under the Act). The Commission derives its power and authority solely from the statute creating it, and it may not, by its own acts, extend its jurisdiction. *Peoples Energy Corp. v. Illinois Commerce Comm'n*, 142 Ill. App. 3d 917, 923 (1986), citing *Regional Transportation Authority v. Illinois Commerce Comm'n*, 118 Ill. App. 3d 685, 694 (1983); *Ace Ambulance & Oxygen Service Co. v. Illinois Commerce Comm'n*, 75 Ill. App. 3d 17, 19 (1979). The Commission's jurisdiction must be found, if at all, in the Commission's power to regulate public utilities. *Peoples Energy Corp.*, 142 Ill. App. 3d at 924.

The Act specifically provides that the Commission "shall have general supervision of all public utilities" including "the manner in which their plants, equipment and other property *** are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with this Act and any other law, with the orders of the Commission and with the charter and franchise requirements." 220 ILCS 5/4-101 (West 2006). Further,

15

authority to order improvements to a public utility's facilities is vested with the Commission in section 8-503 of the Act. 220 ILCS 5/8-503 (West 2006).

The very purpose of the Act is to maintain control over the operation of utilities so as to prevent them from exacting unjust, unreasonable, and discriminatory rates. *Bloom Township High School v. Illinois Commerce Comm'n*, 309 Ill. App. 3d 163, 175 (1999). The theory behind the regulation of public utilities is the protection of the public and the assurance of adequate service while, at the same time, securing for the utility a fair opportunity to generate a reasonable return. *Bloom Township High School*, 309 Ill. App. 3d at 175, citing *Village of Monsanto v. Touchette*, 63 Ill. App. 2d 390, 400 (1965); see also *Local 777 v. Illinois Commerce Comm'n*, 45 Ill. 2d 527, 535 (1970) ("Because unrestrained competition prior to adoption of the Act had often resulted in the financial failure of many utilities, the Act adopted a policy of regulated monopoly to assure that utilities would be able to earn a reasonable rate of return on their investment and thus would be able to provide the required service"). The Commission exists to maintain a balance between the rates charged by utilities and the services they perform. *Bloom Township High School*, 309 Ill. App. 3d at 175, citing *Village of Apple River v. Illinois Commerce Comm'n*, 18 Ill. 2d 518, 523 (1960).

In order to effectuate the above-stated principles, the Act requires public utilities such as ComEd to file tariffs with the Commission. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 55 (2004), citing 220 ILCS 5/9-102 (West 1994). A tariff is a public document setting forth services being offered; rates and charges with respect to services;

16

and governing rules, regulations, and practices relating to those services. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 55 (2004), citing *North River Insurance Co. v. Jones*, 275 Ill. App. 3d 175, 185 (1995). A tariff is usually drafted by the regulated utility, but when duly filed with the Commission, it binds both the utility and the customer and governs their relationship. *Adams*, 211 Ill. 2d at 55, citing *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 765, 986 P. 2d 377, 381 (1999). Once the Commission approves a tariff, it "is a law, not a contract, and has the force and effect of a statute." *Adams*, 211 Ill. 2d at 55, citing *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.*, 67 Ill. App. 3d 435, 439 (1978), *aff'd*, 78 Ill. 2d 56 (1979).

Tariff provisions, such as ComEd's tariff, are usually referred to as liability limitations. *Adams*, 211 Ill. 2d at 57, citing *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 247 (1994) (Miller, J., specially concurring); *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 768, 986 P. 2d 377, 383 (1999). Liability limitations reflect the status of public utilities as regulated monopolies whose operations are subject to extensive restrictions; the requirements of uniform, nondiscriminatory rates; and the goal of universal service, achieved through the preservation of utility prices that virtually all customers can afford. *Adams*, 211 Ill. 2d at 57, citing *Illinois Bell Switching Station*, 161 Ill. 2d at 249 (Miller, J., specially concurring). The underlying theory of liability limitations is that, because a public utility is strictly regulated, its liability should be defined and limited so that it may be able to

17

provide service at reasonable rates. *Adams*, 211 Ill. 2d at 57. A reasonable rate is in part dependent on a rule limiting liability. *Adams*, 211 Ill. 2d at 57, citing *Illinois Bell Switching Station*, 161 Ill. 2d at 244-46; *Danisco*, 267 Kan. at 769, 986 P. 2d at 384.. "The goal is 'to secure reasonable and just rates for all without undue preference or advantage to any. Since that end is attainable only by adherence to the approved rate, based upon an authorized classification, that rate "represents the whole duty and the whole liability of the company." ' " *Adams*, 211 Ill. 2d at 57, quoting *Western Union Telegraph Co. v. Priester*, 276 U.S. 252, 259, 72 L. Ed. 555, 565, 48 S. Ct. 234, 235 (1928), quoting *Western Union Telegraph Co. v. Esteve Brothers & Co.*, 256 U.S. 566, 572, 65 L. Ed. 1094, 1097, 41 S. Ct. 584, 586 (1921).

## 2. Civil Actions Against Illinois Public Utilities

Despite the foregoing regulatory scheme generally vesting the Commission with oversight of Illinois public utilities and the limitations upon Illinois public utilities' liability, suits against public utilities may be pursued in the Illinois court system. Sections 9-252 and 5-201 of the Act define the Commission and the courts' jurisdiction over claims against Illinois public utilities.

Section 9-252 of the Act provides:

"When complaint is made to the Commission concerning any rate or other charge of any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the

18

Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

* * *

All complaints for the recovery of damages shall be filed with the Commission within 2 years from the time the produce, commodity or service as to which complaint is made was furnished or performed, and a petition for the enforcement of an order of the Commission for the payment of money shall be filed in the proper court within one year from the date of the order, except that if an appeal is taken from the order of the Commission, the time from the taking of the appeal until its final adjudication shall be excluded in computing the one year allowed for filing the complaint to enforce such order.

The remedy provided in this section shall be cumulative, and in addition to any other remedy or remedies in this Act provided in case of failure of a public utility to obey a rule, regulation, order or decision of the Commission."  220 ILCS 5/9-252 (West 2006).

This section has been construed to vest the Commission with exclusive jurisdiction over claims that rates are excessive or unjustly discriminatory.  *Village of Deerfield v. Commonwealth Edison Co.*, No. 2-08-0917 (December 15, 2009), citing *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1104 (2006);

No. 1-09-0849

*Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813
(1998).

Conversely, section 5-201 of the Act places within the jurisdiction of the circuit
court matters not pertaining to excessive or unjustly discriminatory rates, over which the
Commission has exclusive jurisdiction. *Village of Deerfield*, slip op. at 4, citing *Village
of Roselle*, 368 Ill. App. 3d at 1109. Section 5-201 of the Act states:

> "In case any public utility shall do, cause to be done or permit to
>
> be done any act, matter or thing prohibited, forbidden or declared to be
>
> unlawful, or shall omit to do any act, matter or thing required to be done
>
> either by any provisions of this Act or any rule, regulation, order or
>
> decision of the Commission, issued under authority of this Act, the public
>
> utility shall be liable to the persons or corporations affected thereby for all
>
> loss, damages or injury caused thereby or resulting therefrom, and if the
>
> court shall find that the act or omission was wilful, the court may in
>
> addition to the actual damages, award damages for the sake of example
>
> and by the way of punishment. An action to recover for such loss, damage
>
> or injury may be brought in the circuit court by any person or corporation.
>
> In every case of a recovery of damages by any person or
>
> corporation under the provisions of this Section, the plaintiff shall be
>
> entitled to a reasonable attorney's fee to be fixed by the court, which fee

20

shall be taxed and collected as part of the costs in the case." 220 ILCS 5/5-201 (West 2006).

The foregoing provisions establish the general principle that the Commission's jurisdiction is nonexclusive. *Wernikoff v. RCN Telecom of Illinois, Inc.*, 341 Ill. App. 3d 89, 94 (2003). In accordance with section 9-252 of the Act, the Commission has original jurisdiction over complaints of excessive rates or overcharges by public utilities; and courts have jurisdiction over those matters only on administrative review. *Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813 (1998), citing *Chicago ex rel. Thrasher v. Commonwealth Edison Co.*, 159 Ill. App. 3d 1076 (1987); *Citizens Utilities Co. v. Illinois Commerce Comm'n*, 157 Ill. App. 3d 201 (1987); *Gowdey v. Commonwealth Edison Co.*, 37 Ill. App. 3d 140 (1976). " 'The evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission precludes an action at law for such reparation until the commission has heard a claim therefor.' " *Village of Evergreen Park*, 296 Ill. App. 3d at 813, quoting *Terminal R.R. Ass'n v. Public Utilities Comm'n*, 304 Ill. 312, 317 (1922).

In *Village of Evergreen Park*, 296 Ill. App. 3d 810, the plaintiff municipality filed a lawsuit against ComEd seeking monetary and equitable relief alleging that ComEd had wrongfully collected money for lighting equipment and services that were not provided. Specifically, the plaintiff municipality alleged that ComEd had charged it for electricity provided to street lights that no longer existed, and the plaintiff municipality sought

21

reimbursement of the monies paid to ComEd for those charges. *Village of Evergreen Park*, 296 Ill. App. 3d at 812. Pursuant to ComEd's section 2-619 motion (See 735 ILCS 5/2-619 (West 2006)), the trial court dismissed the plaintiff municipality's complaint for lack of subject matter jurisdiction, finding that the Commission had exclusive original jurisdiction over claims for refunds or overcharges. On appeal, the plaintiff municipality argued that its complaint alleged that ComEd breached its contract with the plaintiff municipality for charging for services not provided in ComEd's tariff and that the breach of contract claim was properly filed in the circuit court. In affirming the dismissal of the plaintiff municipality's complaint, this court found that the "fact that the plaintiff labels its action a breach of contract action is not dispositive nor does it transform plaintiff's action into a civil action for damages." *Village of Evergreen Park*, 296 Ill. App. 3d at 816-17. The essence of the plaintiff municipality's claim was that ComEd "charged too much for the service, it provided," and that claim was within the exclusive jurisdiction of the Commission. *Village of Evergreen Park*, 296 Ill. App. 3d at 818.

As noted, contrary to section 9-252 of the Act, section 5-201 of the Act places within the jurisdiction of the circuit court matters not pertaining to excessive or unjustly discriminatory rates, over which the Commission has original jurisdiction. *Village of Roselle*, 368 Ill. App. 3d at 1109.

With this framework defining the jurisdiction of the Commission over Illinois public utilities in mind, we proceed to the issues presented by this appeal.

### 3. The Trial Court did not Err by Dismissing Plaintiffs' Complaint

The allegations contained in and the relief sought by plaintiffs' complaint can be divided into two categories. A major portion of plaintiffs' complaint makes allegations concerning the inadequacy of ComEd's infrastructure and ComEd's responses to power outages when they occur and requests injunctive relief directing ComEd's conduct in the future. The remainder of plaintiffs' complaint alleges that plaintiffs were damaged by ComEd's conduct and seeks legal redress in the form of money damages. We first address the propriety of the trial court's order dismissing those portions of plaintiffs' complaint seeking injunctive relief.

### a. Injunctive Relief

As noted, plaintiff's third amended complaint sought to enjoin ComEd "from its practice of refusing to have in place infrastructure and planning, that, by design, cannot prevent controllable interruptions of power," and "cannot permit ComEd to timely respond" to a power interruption.

The complaint's most specific allegations concerning injunctive relief pertain to the Sloan plaintiffs. As noted, Jason Sloan, who lives with his mother, Debra Sloan, requires a ventilator to breathe. The Sloan residence lost power during the August 23, 2007, storm. The complaint alleges that Debra Sloan attempted to receive assistance from a ComEd customer service representative and that she received "curt treatment" on the phone. As a result of the power outage, Debra connected Jason's ventilator to a "temporary generator," contained in their residence's basement; however, the back-up

23

efforts to supply power to Jason's ventilator failed after the Sloan residence's basement flooded. Unable to learn when her home's electric power would be restored, Debra moved her son to an undisclosed location that apparently had electrical power.

As noted, the Sloan residence appeared on the life-support equipment registry that ComEd maintains under section 8-204 of the Act (220 ILCS 5/8-204 (West 2006)), due to the presence of life-support equipment within the residence. Section 8-204 of the Act requires "[e]very public utility company which furnishes electricity to residential customers [to] *** maintain a registry of those individuals who are dependent on an electrically operated respirator, dialysis machine or any other electrically operated life-support equipment." 220 ILCS 5/8-204 (West 2006). The complaint alleges that ComEd refused to use the registry to assign the Sloan residence priority in restoring electrical power, and further alleges that "ComEd rushed to restore power of certain VIPs," rather than give priority to those customers on the life-support equipment registry. As noted, plaintiffs twice sought a temporary restraining order or preliminary injunction.

The trial court denied plaintiffs' injunction requests, and upon ComEd's motion to dismiss, dismissed plaintiffs' claims pertaining to ComEd's life-support equipment registry with prejudice. The trial court found that the relief sought was a request for the trial court to assume the role of the Commission as the regulator of public utilities.

On appeal, plaintiffs contend that the trial court's reasoning in dismissing their claims for injunctive relief was faulty. Plaintiffs concede that a complaint seeking an adjudication of ComEd's level of service and response to an outage when one occurs

24

would properly lie with the Commission. However, plaintiffs contend that the complaint does not seek an "adjudication of the proper level of [ComEd's] service." We do not find plaintiffs' argument persuasive.

The third amended complaint in the case at bar clearly seeks an adjudication of ComEd's level of service and its response to a power outage when an outage occurs. The complaint seeks an order enjoining ComEd "from its practice of refusing to have in place infrastructure and planning" that cannot permit ComEd to properly prevent "controllable" interruptions of power and cannot permit ComEd to timely respond to a power interruption when an interruption occurs. Further, the complaint seeks an order directing ComEd to use the life-support equipment registry in assigning priority for power restoration when an outage occurs. Such determinations are properly made by the Commission, not by the courts.

As noted, the Act provides that the Commission "shall have general supervision of all public utilities" including "the manner in which their plants, equipment and other property *** are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with this Act and any other law, with the orders of the Commission and with the charter and franchise requirements." 220 ILCS 5/4-101 (West 2006). Further, authority to order improvements to a public utility's facilities is vested with the Commission in section 8-503 of the Act. 220 ILCS 5/8-503 (West 2006).

Moreover, although the Act requires "[e]very public utility company which furnishes electricity to residential customers [to] *** maintain a registry of those individuals who are dependent on an electrically operated respirator, dialysis machine or any other electrically operated life-support equipment" (220 ILCS 5/8-204 (west 2006)), the Act does not dictate that ComEd use the registry to assign priority to such households in its power restoration efforts or how to implement such power restoration efforts.

As noted, plaintiffs alleged that Debra Sloan received "curt" treatment on the telephone from a ComEd service representative when she attempted to receive assistance from ComEd and that ComEd "rushed to restore" the power of certain "VIPs" rather than assign priority to those customers who are listed on the life-support equipment registry. Although plaintiffs' allegations concerning ComEd's reaction to the Sloan plaintiffs' request for assistance are shocking, and if true, deplorable, the determination of whether ComEd should and indeed whether it is practically feasible for ComEd to assign priority of power restoration to those listed on the life-support equipment registry is properly addressed by the Commission, not the trial court.

Even if the trial court was a proper forum for the plaintiffs' claims seeking injunctive relief directing ComEd to use the life-support equipment registry in assigning priority in restoring power after an outage, the trial court properly dismissed plaintiffs' complaint under *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999). In *Spagnolo*, our Illinois Supreme Court affirmed the dismissal of a request for a sweeping mandatory injunction to correct allegedly deplorable conditions at a school because the allegations were based

on vague and unspecified duties and sought protection for injuries that had not occurred and may never occur. *Spagnolo*, 186 Ill. 2d at 235. In affirming the dismissal, the court found that the "plaintiffs allege merely that the defendants have violated 'common law duties,' without specifying what those duties are or what acts or omissions of the defendants breached those duties." *Spagnolo*, 186 Ill. 2d at 233. Furthermore, the court ruled it could not issue the injunction the plaintiffs sought since the plaintiffs "ha[d] not provided any basis for us to grant them relief for injuries which have not occurred, and which may never occur." *Spagnolo*, 186 Ill. 2d at 235.

Plaintiffs here similarly seek injunctive relief that seeks to prevent some unspecified injuries or damages to them that have not occurred and which may never occur. See *Geller v. Brownstone Condominium Ass'n*, 82 Ill. App. 3d 334, 337 (1980) (recognizing the impossibility of enjoining future negligence).

Based upon the foregoing, the trial court did not err by dismissing plaintiffs' claims for injunctive relief, including those claims pertaining to the life-support equipment registry with prejudice.

### b. Legal Relief

As noted, the remainder of plaintiffs' third complaint alleges that plaintiffs were damaged by ComEd's conduct and seeks legal redress in the form of money damages.

The third amended complaint alleges that plaintiffs "sustained at least the following damages as a result of ComEd's acts and conduct: spoiled food, water damage

to walls, furniture, fixtures, appliances, furnace and water heaters, and medical and electrical equipment."

The initial question we must address is whether the relief plaintiffs seek implicates rates. This is because the Commission has "exclusive jurisdiction over complaints of excessive rates or overcharges by public utilities[] and courts have jurisdiction over those matters only on administrative review." *Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813 (1998); *City of Chicago ex re Thrasher v. Commonwealth Edition Co.*, 159 Ill. App. 3d 1076, 1079-80 (1987).

As noted, because the trial court dismissed plaintiffs' complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)), it never reached ComEd's contentions under section 2-619 of the Code (735 ILCS 5/2-619 (West 2006)). Plaintiffs' argue that since the trial court never ruled on these contentions, it would be error for this court to do so. However, as a reviewing court we may uphold a trial court's dismissal on any basis found in the record regardless of the propriety of the trial court's reasoning. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1110 (2006), citing *People v. Cornelius*, 213 Ill. 2d 178, 191 (2004); *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985); *Argonaut Insurance Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 11 n.7 (2004).

Section 2-619(a)(1) of the Code (735 ILCS 5/2-619(a)(1) (West 2006)) specifically allows for dismissal where the trial court does not have jurisdiction of the subject matter of the action. Such a motion admits the legal sufficiency of the complaint

for purposes of the motion but interposes an affirmative defense, in this instance the court's lack of subject matter jurisdiction, as barring the lawsuit from going forward. *Cain v. American National Bank & Trust Co. of Chicago*, 26 Ill. App. 3d 574 (1975). A motion to dismiss by reason of the court's lack of subject matter jurisdiction may be made at any stage of a proceeding. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 99 Ill. App. 3d 462 (1981).

As a result, we must determine whether plaintiffs' third amended complaint pertains to rates. In determining whether an action falls within the jurisdiction of the Commission, courts have consistently focused on the nature of the relief sought rather than the basis for seeking relief. *Flourney v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004), citing *Village of Evergreen Park*, 296 Ill. App. 3d 810; *Thrasher*, 159 Ill. App. 3d 1076. If the plaintiff's action is for reparations, the Commission has jurisdiction. However, if the action is for civil damages, then the trial court may hear the case. *Flourney*, 351 Ill. App. 3d at 585, citing *Village of Evergreen Park*, 296 Ill. App. 3d 810; *Thrasher*, 159 Ill. App. 3d 1076.

A claim is for reparations when the essence of the claim is that a utility has charged too much for a service. *Flourney*, 351 Ill. App. 3d at 585, citing *Village of Evergreen Park*, 296 Ill. App. 3d 810; *Thrasher*, 159 Ill. App. 3d 1076. In contrast, a claim is for civil damages when the essence of the claim is not that the utility has excessively charged, but rather that the utility has done something else to wrong the

plaintiff. *Flourney*, 351 Ill. App. 3d at 585, citing *Village of Evergreen Park*, 296 Ill. App. 3d 810; *Thrasher*, 159 Ill. App. 3d 1076.

The term "rate" is defined by the Act to include: "every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility *** and any rule, regulation, charge, practice or contract relating thereto." 220 ILCS 5/3-116 (West 2006). The Commission's jurisdiction has been interpreted broadly since section 9-252 refers to rates or "other charge of any public utility" (220 ILCS 5/9-252 (West 2006)). *Village of Evergreen Park*, 296 Ill. App. 3d at 813, citing *Sutherland v. Illinois Bell*, 254 Ill. App. 3d 983 (1993); *Klopp v. Commonwealth Edison Co.*, 54 Ill. App. 3d 671 (1977); *Malloy v. Illinois Bell Telephone Co.*, 12 Ill. App. 3d 483 (1973).

We find that plaintiffs' complaint pertains to rates because the third amended complaint concerns claims that ComEd provided inadequate or unreliable electrical services to plaintiffs. In essence, plaintiffs' complaint alleges that ComEd's level of service and restoration efforts following a power outage are substandard. Specifically, the complaint alleges that "on or about August 23, 2007, and thereafter, ComEd failed to provide, and timely restore power to the plaintiffs and other customers in Illinois including Cook County." The complaint further alleges that ComEd failed to implement an "adequate manpower planning process" to effectively restore electric power to its customers.

Plaintiffs' claims directly relate to the Commission's rate-setting functions for electrical power services. Fundamentally, plaintiffs' complaint alleges that ComEd

30

should provide its customers a greater level of service. These claims raise the regulatory question of how ComEd should recover the costs of raising the level of service it provides. The questions of how ComEd should effectuate an improvement in service and whether ComEd's customers should pay more for the electrical services provided by ComEd fall squarely within the Commission's jurisdiction over rates and a utility's practices and contracts related to rates. See *Village of Evergreen Park*, 296 Ill. App. 3d at 813 (Commission has exclusive jurisdiction over rate reparation claims); 220 ILCS 5/3-116 (West 2006) (defining "rates" broadly to include practices and contracts relating to rates).

Further, ComEd's filed tariff specifically states that when "larger, more, or different" services or facilities are requested, the Commission must determine whether the improvements would be "reasonably and technically feasible" without having a significant adverse impact on the reliability and efficiency of ComEd's overall system. Ill. Com. Comm'n No. 10, Orig. Sheet No. 20.

Plaintiffs' prayer for relief pertaining to damages is predicated on allegations that ComEd is not providing adequate service under the Act. If allowed to proceed in the trial court, these claims would place the trial court in the position of assessing what constitutes adequate service, and whether ComEd has fulfilled its responsibility of providing adequate services. That type of determination is the core of the Commission's regulatory function and is within its jurisdiction pertaining to "rates."

31

We also find that plaintiffs' claims for damages cannot proceed in the courts by our Illinois Supreme Court's holding in *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233 (1994). *Illinois Bell Switching Station* arose after a telephone switching station caught fire, allegedly due to the negligent or willful failure of the defendant telephone utility to take adequate fire-prevention measures. *Illinois Bell Switching Station*, 161 Ill. 2d at 236. The fire left the plaintiffs without telephone services for approximately a month. *Illinois Bell Switching Station*, 161 Ill. 2d at 236. Following the fire, the plaintiffs filed a complaint seeking to recover for the damages they incurred from their loss of telephone services. *Illinois Bell Switching Station*, 161 Ill. 2d at 236.

The plaintiffs' complaint in *Illinois Bell Switching Station* alleged violations of the Act (220 ILCS 5/1-101 *et seq*. (West 1992)) and sought a declaratory judgment that a provision in the defendant telephone utility's tariff did not bar their claims. In their complaint, the plaintiffs alleged that the defendant telephone utility violated section 8-101 and 8-401 of the Act, as well as several Commission rules. The defendant telephone utility argued that its filed tariff defined the limits of its liability for interruptions in service.

In *Illinois Bell Switching Station*, like the instant case, the plaintiffs sought to bring action against the defendant utility under section 5-201 of the Act. *Illinois Bell Switching Station*, 161 Ill. 2d at 238-39. Section 5-201 of the Act in effect at the time of *Illinois Bell Switching Station*, which is identical to the version currently in effect, provided as follows:

"  'In case any public utility shall do, cause to be done or permit to

be done any act, matter or thing prohibited, forbidden or declared to be

unlawful, or shall omit to do any act, matter or thing required to be done

either by any provisions of this Act or any rule, regulation, order or

decision of the [Illinois Commerce] Commission, issued under authority

of this Act, *the public utility shall be liable to the persons or corporations*

*affected thereby for all loss, damages or injury caused thereby or*

*resulting therefrom*, and if the court shall find that the act or omission was

wilful, the court may in addition to the actual damages, award damages for

the sake of example and by the way of punishment.' "  (Emphasis in

original.)  *Illinois Bell Switching Station*, 161 Ill. 2d at 239, quoting 220

ILCS 5/5-201 (West 1992).

Reiterating its holding in *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213

(1978), our Illinois Supreme Court first rejected the plaintiffs' argument that the word

"all" in section 5-201 of the Act (220 ILCS 5/5-201 (West 1992)) meant any "loss,

damage or injury whatsoever that can be traced to a utility's negligent or wilful violation

of the Act or Commission rules." *Illinois Bell Switching Station*, 161 Ill. 2d at 239, citing

*Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213 (1978).  In *Barthel*, the plaintiffs

sued for personal injuries and wrongful death resulting from a collision between a car

and one of the defendant's freight trains.  *Illinois Bell Switching Station*, 161 Ill. 2d at

239, citing *Barthel*, 74 Ill. 2d 213.  The *Barthel* plaintiffs sued under section 5-201 (then

section 73) of the Act, alleging violations by the defendant of various regulations relating to the safety of railroad crossings. *Illinois Bell Switching Station*, 161 Ill. 2d at 239, citing *Barthel*, 74 Ill. 2d 213. The *Barthel* plaintiffs argued that when the Illinois legislature stated that a utility violating the Act "shall be liable" for "all loss, damages or injury," the utility's liability was conclusively demonstrated. *Illinois Bell Switching Station*, 161 Ill. 2d at 239-40, citing *Barthel*, 74 Ill. 2d 213. In *Barthel*, the plaintiffs sought the abrogation of the common law defense of contributory negligence. *Illinois Bell Switching Station*, 161 Ill. 2d at 240, citing *Barthel*, 74 Ill. 2d 213.

In rejecting the plaintiffs' argument, the *Barthel* court noted that the Act is in derogation of the common law, and therefore the tort principles limiting the plaintiffs' claims under the Act would not be deemed abrogated unless "it appears that the intent of the statute" is to do so. *Barthel*, 74 Ill. 2d at 221. Statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation. *Illinois Bell Switching Station*, 161 Ill. 2d at 240. The courts will read nothing into such statutes by intendment or implication. *Illinois Bell Switching Station*, 161 Ill. 2d at 240, citing *Barthel*, 74 Ill. 2d at 220. The *Barthel* court held that the common law defense of contributory negligence was available, despite the Act's provision of liability for "all *** damages" resulting from a violation of the Act. *Barthel*, 74 Ill. 2d at 220.

Having found that the Illinois legislature did not provide for limitless recovery under section 5-201 of the Act, the court in *Illinois Bell Switching Station* went on to

consider whether the defendant telephone utility's tariff barred the plaintiffs' lawsuit. *Illinois Bell Switching Station*, 161 Ill. 2d at 241.

The tariff on file with the Commission at the time of the fire in *Illinois Bell Switching Station* listed among the defendant telephone utility's general "regulations" a service interruption liability exclusion. That exclusion provided:

" 'The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission occurring in the course of furnishing service *** shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, error or defect in transmission occurs. No other liability shall in any case attach to the Company.' " *Illinois Bell Switching Station*, 161 Ill. 2d at 242, citing Illinois Bell Telephone Company Tariff, Ill. Com. Comm'n, No. 5, pt. 1, §5, par. 3.1.

The *Illinois Bell Switching Station* plaintiffs argued that the tariff should not bar their claims because the tariff was against public policy and conflicted with provisions of the Act. *Illinois Bell Switching Station*, 161 Ill. 2d at 242-43.

In holding that the tariff controlled in that case, our Illinois Supreme Court found no duty on which to base the plaintiffs' claims. The court initially noted that the defendant telephone utility was nowhere charged with the duty to provide completely uninterrupted service. Rather, its duty was to provide adequate, efficient, and reliable

service, which is not tantamount to infallible service. Temporary disruptions may occur without reducing the defendant telephone utility's service to a level less than adequate, efficient, or reliable. *Illinois Bell Switching Station*, 161 Ill. 2d at 243. Further, the court held that the exculpatory language in the telephone utility's tariff properly limited claims from disruption of service to a rebate of the costs for the missed service and concluded that the tariff's provision, which limited Bell's liability in the event of a service disruption, was not contrary to the Act. *Illinois Bell Switching Station*, 161 Ill. 2d at 243-44.

Turning to the facts of the instant case, at the time of the August 2007 storms, ComEd's tariff, on file with the Commission, provided in pertinent part:

"The Company shall not be responsible in damages for any failure to supply electricity, or for interruption, or reversal of the supply, if such failure, interruption, or reversal is without willful default or negligence on its part, not for interruptions, by under frequency relays or otherwise, to preserve the integrity of the Company's system or interconnected systems.

The Customer will be entitled to a reduction in charges for service equal to the Monthly Customer Charge for any billing month in which service to the customer is interrupted for a period of 12 consecutive hours or more due to any of the following conditions: (i) Company equipment malfunction not caused by weather; (ii) Commonwealth Edison employee or its contractor error; (iii) accident involving Commonwealth Edison

employee or its contractor; (iv) damage to company equipment caused by Commonwealth Edison employee or its contractor; or (v) overloaded Company distribution equipment not caused by Customer negligence. If the duration of any service interruption resulting from any of the causes referred to in items (i) through (v) is equal to or exceeds 24 consecutive hours, or if there is more than one such service interrupted of Monthly Customer Charge for such billing month multiplied by the number of increments of 12 consecutive hours of interruption in excess of the first 12 consecutive hours." Ill. Com. Comm'n No. 4, 10th Revised Sheet No. 56.

Like *Illinois Bell Switching Station*, the plaintiffs' claims in the instant case are barred by ComEd's tariff. This result is well rooted in Illinois law. ComEd's tariff is required by the Act and plays an integral role in allowing ComEd to meet the expectations of the Illinois legislature. See *Illinois Bell Switching Station*, 161 Ill. 2d at 244. ComEd is required to file a tariff in order to meet the legislature's dictate that it provide cost-effective service. ComEd has done so, and the Illinois legislature has approved the limitation of liability applicable to this case.

Based upon the foregoing, the trial court did not err in dismissing plaintiffs' complaint in its entirety.

4. The Trial Court did not Err by Denying Plaintiffs' Motion for Leave to Amend

We finally come to the question of whether the trial court abused its discretion in denying plaintiffs' motion for leave to amend their complaint for a fourth time. As

noted, plaintiffs sought leave to amend their complaint to solely seek a damages claim. The trial court ordered briefing regarding whether plaintiffs should be granted leave to amend. Plaintiffs offered their proposed fourth amended complaint on the day of oral argument pertaining to plaintiffs' motion for leave to amend. The proposed amended complaint contained only one count alleging that ComEd violated section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)). Addressing section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)), the trial court denied plaintiffs' motion for leave to file an amended complaint finding, "[I]n looking at this particular provision (referring to 220 ILCS 5/16-125 (West 2006)), it seems to me clear that what the legislature has done is provide a remedy for broad based power outages sought through the [Commission]."

Whether to grant a motion to amend pleadings rests within the sound discretion of the trial court, and a reviewing court will not reverse a trial court's decision absent an abuse of that discretion. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 467 (2006), citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467 (1992). The relevant factors to be considered in determining whether the trial court abused its discretion are:

> " '(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.' " *Cangemi*, 364 Ill. App. 3d at 467, citing *Loyola*

*Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992),

citing *Kupianen v. Graham*, 107 Ill. App. 3d 373, 377 (1982).

A proposed amendment must meet all four *Loyola Academy* factors; however, "if [a] proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis." *Cangemi*, 364 Ill. App. 3d at 467, quoting *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004).

In the case at bar, we cannot find that the trial court abused its discretion by denying plaintiffs' motion for leave to amend for the fourth time because the proposed amended complaint fails to meet the first of the *Loyola Academy* factors. As noted, section 16-125 of the Act provides, in relevant part:

"(a) To assure the reliable delivery of electricity to all customers in this State *** the Commission shall *** adopt rules and regulations for assessing and assuring the reliability of the transmission and distribution systems and facilities that are under the Commission's jurisdiction.

(b) These rules and regulations shall require each electric utility *** subject to the Commission's jurisdiction *** to adopt and implement procedures for restoring transmission and distribution services to customers after transmission or distribution outages *** .

* * *

(e) In the event that more than 30,000 customers of an electric utility are subjected to a continuous power interruption of 4 hours or more *** the utility shall be responsible for compensating customers affected by that interruption *** for all actual damages, which shall not include consequential damages, suffered as a result of the power interruption *** . A waiver of the requirements of this subsection may be granted by the Commission in instances in which the utility can show that the power interruption was a result of any one or more of the following causes:

(1) Unpreventable damage due to weather events or conditions." 220 ILCS 5/16-125 (West 2006).

Our review of section 16-125 of the Act leads us to the conclusion that the legislature intended for the Commission to have jurisdiction over the damages remedies under the section. 220 ILCS 5/16-125 (West 2006). The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Ave. National Bank v. County of Cook*, 191 Ill. 2d 49, 503-04 (2000). Statutes should be interpreted as a whole, meaning different sections of the same statute should be considered in reference to one another so that they are given harmonious effect. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. One section of a statute should not be interpreted in a way that renders another section of the same statute irrelevant. *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185-86 (2006). If the statute's plain meaning is ambiguous,

then courts may examine external sources, such as the legislative history or the statute's administrative regulations. *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 400 (2004); *Lauer v. American Family Life Insurance Co.*, 199 Ill. 2d 384, 388 (2002).

Section 16-125(e) provides a series of specific circumstances under which, in the event of a single power interruption that affects more than 30,000 customers, an affected customer that lost power may be entitled to actual damages, unless the outage was caused by certain types of factors, including unpreventable damage due to weather. According to section 16-125(e), the Commission can grant a waiver of the damages remedy to a public utility if such factors are present. 220 ILCS 5/16-125(e) (West 2006).

Section 16-125(h), in turn, vests jurisdiction in the Commission for actions to pursue remedies under section 16-125(e) and directs that complaints be filed with the Commission under section 10-109 of the Act (220 ILCS 5/10-109 (West 2006)). Section 16-125(h) currently reads:

> "(h) Remedies provided for under this Section may be sought exclusively through the [Commission] as provided under Section 10-109 of this Act." 220 ILCS 5/16-125(h) (West 2006).

Based upon the foregoing, the Commission has jurisdiction over the damages remedy provided for by section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)), and the trial court did not abuse its discretion by denying plaintiffs' motion to amend their complaint for the fourth time to seek a damages claim under section 16-125(e) of the Act.

41

5. Village of Deerfield v. Commonwealth Edison Co.

Subsequent to the parties' filing of their briefs to this court, the second district of the Illinois appellate court decided the case of *Village of Deerfield v. Commonwealth Edison Co.*, No. 2-08-0917 (December 15, 2009). In that case, the Village of Deerfield filed a complaint containing three counts against ComEd. Count I of the village's complaint, entitled "Breach of Contract," alleged that chronic electrical outages occurred within the village as a result of various breaches of ComEd's duties under a "Franchise Agreement." Count II of the village's complaint, entitled "Civil Damages for Violation of Public Utilities Act," alleged that ComEd violated several of its duties under the Act. Count III of the village's complaint sought class-action certification for all customers located within the village who suffered damages such as "spoiled food, purchase of electric generators to deal with [ComEd's] unreliable service, property damage, temporary housing, [and] extra municipal and policing services." The trial court dismissed the village's complaint with prejudice determining that the Commission had exclusive jurisdiction over the village's claims.

On appeal, the Second District of the Illinois Appellate Court reversed and remanded to the trial court finding that the village's complaint did not allege excessive or discriminatory rates, but alleged deficient performance by ComEd, which the village attacked through a number of theories, i.e., contract, tort, violation of the Act. *Village of Deerfield*, slip op. at 9. However, the court determined that under the doctrine of primary jurisdiction, upon remand the trial court should stay the trial proceedings and refer the

42

controversy to the Commission. *Village of Deerfield*, slip op. at 14-15 (the doctrine of primary jurisdiction holds that a court, despite having subject matter jurisdiction over a matter, should, in certain circumstances, stay a judicial proceeding pending referral of a controversy, or some portion of it, to an administrative agency have expertise in the area; such circumstances are when an agency possesses specialized expertise that would aid in the resolution of a controversy or when a need exists for uniform administrative standards).

We decline to follow the Second District's analysis reversing and remanding to the trial court to stay the proceedings pending referral to the Commission under the doctrine of primary jurisdiction. We do so because we have already found that complaint in the instant case implicates rates, which lies within the jurisdiction of the Commission. The complaint in the case at bar seeks relief that intimately impacts the legislature's rate-setting function. As noted, in accordance with section 9-252 of the Act, the Commission has original jurisdiction over complaints of excessive rates or overcharges by public utilities, and courts have jurisdiction over those matters only on administrative review. *Village of Evergreen Park*, 296 Ill. App. 3d at 813. The plaintiffs in the case at bar should file a complaint with the Commission as proscribed by the Act if they choose to do so. If plaintiffs are dissatisfied with the result reached in the Commission, they then can file for administrative review in accordance with this state's administrative review laws.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.