# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166

---

| | |
|---|---|
| Caption in Supreme Court: | FRANCIS SHEFFLER *et al.*, Appellants, v. COMMONWEALTH EDISON COMPANY, Appellee. |
| Docket No. | 110166 |
| Filed | June 16, 2011 |
| Rehearing denied | September 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a plaintiff's complaint is based upon allegations concerning a utility's infrastructure and its provision of electrical services and seeks relief based upon systemic defects in the provision of electrical services or the repair of those services when a power outage occurs, that complaint seeks reparations and is within the exclusive jurisdiction of the Illinois Commerce Commission under section 16-125 of the Public Utilities Act; additionally, section 8-101 of the Act does not require an electrical utility to assign priority in power restoration to those households listed on the utility's life-support registry. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | Larry D. Drury, Ilan J. Chorowsky, John H. Alexander and Robert A. Langendorf, all of Chicago, for appellants.<br><br>John Joseph Hamill, Erinn L. Wehrman, Elizabeth L. Liebschutz and Nangah N. Tabah, of Jenner & Block LLP, of Chicago, for appellee.<br><br>Peter D. Coblentz, of Rosenthal, Murphey, Coblentz & Donahue, and Norman T. Finkel and Richard M. Goldwasser, of Schoenberg Finkel Newman & Rosenberg LLC, all of Chicago, for *amicus curiae* Village of Deerfield.<br><br>Michael M. Conway, Theodore T. Eidukas, Katherine E. Licup and Jonathan W. Garlough, of Foley & Lardner LLP, of Chicago, for *amici curiae* The Peoples Gas Light & Coke Company et al. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion.<br>Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiffs, Frances Sheffler, Mark Resnik, and Debra Sloan, individually and on behalf of Jason Sloan, filed a complaint on behalf of a putative class against defendant, Commonwealth Edison Company (ComEd), seeking damages and injunctive relief for power outages to their homes following severe storms. Plaintiffs filed an initial complaint, followed by a first, second and third amended complaint. The circuit court dismissed plaintiffs' third amended complaint with prejudice, and denied plaintiffs leave to file a fourth amended complaint. On appeal, the Appellate Court, First District, affirmed. 399 Ill. App. 3d 51.

¶ 2 This court granted plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). In addition, pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010), we allowed the Village of Deerfield to file a brief *amicus curiae* on behalf of plaintiffs. We also permitted the Peoples Gas Light and Coke Company, North Shore Gas Company and Northern Illinois Gas Company, d/b/a Nicor Gas Company, to file a brief *amici curiae* on behalf of defendant.

¶ 3                              BACKGROUND

¶ 4 On August 23, 2007, severe storm systems affected the Chicago area, resulting in the loss

of electrical power to many of ComEd's customers, including plaintiffs. As a result of the power outages, plaintiffs filed their complaint and amended complaints. The original complaint was filed on August 28, 2007. That complaint was filed by plaintiffs Sheffler and Resnik as a class action complaint.

¶ 5        Count I of the original complaint was brought under the Public Utilities Act (the Act) (220 ILCS 5/5-101 *et seq.* (West 2006)) and alleged that ComEd had a duty to act as a reasonably careful public utility to provide continuous power to plaintiffs and the putative class members. Plaintiffs alleged that ComEd was negligent in that it failed to provide continuous, adequate, efficient and reliable power to plaintiffs and the putative class, failed to provide adequate warning prior to the power outage, and failed to adequately maintain its facilities to provide continuous, adequate, efficient and reliable power to plaintiffs and to the putative class. Plaintiffs alleged that ComEd breached its duties because its company-wide manpower planning process is inadequate, its distribution system did not keep pace with system growth and the need for refurbishment, and the distribution system became excessively loaded and did not adequately allow for contingencies for a failure. Plaintiffs contended that ComEd's negligence and failure to act directly and proximately caused the power outages, and caused plaintiffs and the putative class members to suffer property damage and other financial damages. Plaintiffs requested a temporary restraining order and/or a preliminary injunction "enjoining COMED from its practice of attempting to unilaterally settle the claims such as herein and requiring the Plaintiffs and the class to sign a release of all said claims with respect thereto."

¶ 6        Count II of the original complaint was for breach of contract implied in law or fact. Plaintiffs alleged that ComEd impliedly agreed to provide continuous, adequate, efficient and reliable electric service to plaintiffs and the class, that plaintiffs and the class paid ComEd for their electric service, but ComEd breached the contract implied in law or fact by failing to provide such electric service.

¶ 7        On September 19, 2007, plaintiffs were given leave to file an amended class action complaint, which also added plaintiff Debra Sloan, individually and as legal guardian of Jason Sloan. The first amended complaint contained four counts. Count I was again brought under the Act seeking a temporary restraining order and/or preliminary injunction, and added claims that ComEd was negligent in failing to provide priority to disabled persons in restoring their power after a power outage or interruption, and in failing to establish and provide priority power to persons registered in ComEd's life support registry (see 220 ILCS 5/8-204 (West 2006)). Count II again alleged a breach of contract implied in law or fact.

¶ 8        Count III of the first amended complaint sought an injunction on behalf of the Sloan class. Count III alleged that plaintiff Sloan was the parent and legal guardian of Jason Sloan, a disabled adult, who required the use of a ventilator to breathe 24 hours a day, and who required pacemakers in both his lungs and his heart. Plaintiffs alleged that Sloan was registered in ComEd's life support registry and that Sloan lost her electrical power on August 23, 2007. Sloan connected her son to a temporary generator and telephoned ComEd about the loss of power. Plaintiffs alleged that the ComEd representative was rude and dismissive. Moreover, due to the power outage, Sloan's basement flooded, causing her back-up generator to fail.

¶ 9 Count III further alleged that ComEd refused to give any priority to restoring power to Sloan's residence, refused any assistance to Sloan, and would not give Sloan an anticipated time that her power would be restored. Plaintiffs further alleged that ComEd, in breach of its duty of care to plaintiff and its other customers on the life support registry, failed to warn that in the event of an outage, ComEd would not act to restore power to sustain their life support systems. Plaintiffs sought a temporary restraining order and/or a preliminary injunction enjoining ComEd from refusing to respond on a priority basis to immediately restore power, and from refusing to offer assistance to persons registered in their life support registry. Count IV of plaintiffs' complaint sought a declaratory judgment on behalf of the Sloan class.

¶ 10 ComEd thereafter filed a motion to dismiss the first amended complaint pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2006)). On November 8, 2007, the circuit court dismissed counts III and IV of the first amended complaint, and struck counts I and II, with leave to replead.

¶ 11 Plaintiffs filed their second amended complaint on December 6, 2007. The second amended complaint contained five counts. Count I alleged negligence, claiming that ComEd had a duty to act as a reasonably careful public utility to provide continuous power to plaintiffs and the putative class members, to prevent controllable interruptions or loss of power, to provide adequate, efficient, reliable, just, reasonable and environmentally safe service, to promote the safety, health, comfort and convenience of its customers, and to properly maintain and publicize a life support registry. Plaintiffs alleged that ComEd wantonly, carelessly and negligently acted or failed to act in breach of its duties. Plaintiffs alleged that, as a result of ComEd's negligence, they sustained damages in the form of spoiled food, water damage to walls, furniture, fixtures, appliances, furnace and water heaters, medical and electrical equipment, and repair costs.

¶ 12 Count II of the second amended complaint was brought under the Act, and again sought a temporary restraining order and/or a preliminary injunction enjoining ComEd from its "practice and policy of unilaterally settling claims and requiring the Plaintiffs and the Class members to sign a release of all claims, demands and causes of action with respect to the power outage of August 23, 2007 and thereafter, as alleged herein." Count III again alleged a breach of contract implied in law or fact, and count IV sought an injunction, enjoining ComEd "from its practice of refusing to respond on a priority basis to immediately restore power, refusing to offer assistance to persons registered in their Life Support Registry, or, minimally, providing persons registered in their Life Support Registry regular and frequent updates as to when it is anticipated that power will be restored, if at all."

¶ 13 Finally, count V of the second amended complaint sought a declaratory judgment determining the rights of the parties "including without limitation as to the propriety of ComEd's alleged refusal to respond on a priority basis to immediately (or otherwise) restore power, refusal to offer assistance to persons registered in their Life Support Registry, failure to provide persons registered in their Life Support Registry regular and frequent updates as to when it is anticipated that power will be restored, if at all, publication of the Life Support Registry, and sharing of the Life Support Registry with rescue/emergency response authorities." Plaintiffs also sought a declaratory judgment concerning ComEd's obligations

to repair and maintain power and related equipment, and to plan for and respond to outages.

¶ 14 ComEd filed a motion to dismiss the second amended complaint pursuant to section 2-615. The circuit court struck counts I, II and III of plaintiff's second amended complaint, with leave to replead. The circuit court dismissed counts IV and V without leave to replead.

¶ 15 On August 4, 2008, plaintiffs filed their third amended complaint, the complaint at issue in this case. The third amended complaint contained five counts. Count I alleged negligence, count II alleged a violation of the Act, count III alleged breach of contract implied in law/fact, count IV sought an injunction, and count V alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)). The relevant allegations of the third amended complaint are discussed *infra*.

¶ 16 ComEd moved to dismiss plaintiffs' third amended complaint pursuant to sections 2-615 and 2-619 of the Code. The circuit court granted ComEd's motion to dismiss plaintiffs' third amended complaint in its entirety with prejudice pursuant to section 2-615. The circuit court stated that:

> "what is actually at issue here is that what this lawsuit is about and what the plaintiffs' theory of the case is is [*sic*] that they are actually seeking relief based on systematic defects in the provision of the electrical services or in the repair of those services once an outage occurs. And in the Court's view, these are the type of broad-based allegations and claims that can't survive as a matter of law. *** [T]he allegations at their core are very much like the allegations in the *Lewis E. v. Spagnolo* case [186 Ill. 2d 198 (1999)]. *** The complaint is really looking for relief that whether it's characterized as damages relief or there is a count for injunctive or declaratory relief or an action under the Consumer Fraud Act, the bottom line is that the plaintiffs' allegations go to the way Commonwealth Edison provides services and the adequacy of its response when those services fail for whatever multitude of reasons may exist. I don't think the law provides a relief for the kinds of claims that are stated ***."

¶ 17 In affirming the circuit court, the appellate court first addressed the propriety of the circuit court's order dismissing the portions of plaintiffs' complaint seeking injunctive relief. The appellate court held that plaintiffs' complaint clearly sought an adjudication of ComEd's level of service and its response to a power outage when an outage occurs. 399 Ill. App. 3d at 66. The appellate court held that the injunctive relief requested by plaintiffs was properly addressed by the Illinois Commerce Commission (the Commission) and not the circuit court. *Id.* at 67. Further, even if those claims were properly before the circuit court, the circuit court did not err in dismissing those claims pursuant to *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999). As in *Spagnolo*, plaintiffs' requests for injunctive relief sought to prevent some unspecified injuries or damages to them that had not occurred and might never occur. 399 Ill. App. 3d at 67.

¶ 18 With regard to plaintiffs' claims for legal relief, the appellate court held that the relief sought by plaintiffs implicated rates, as those claims related directly to the Commission's rate-setting functions for electrical power services. 399 Ill. App. 3d at 69. The appellate court concluded that plaintiffs' prayer for relief pertaining to damages was predicated on

allegations that ComEd was not providing adequate service under the Act. *Id*. at 70. If those claims were allowed to proceed in the circuit court, the circuit court would be placed in the position of assessing what constitutes adequate service and whether ComEd fulfilled its responsibility of providing adequate services. *Id*. Noting that it could affirm the circuit court's dismissal on any basis in the record, the appellate court held that plaintiffs' complaint was properly dismissed because the circuit court did not have jurisdiction of the complaint, which is a ground for dismissal under section 2-619(a)(1) of the Code.

¶ 19   The appellate court also held that plaintiffs' claim for damages was barred by the decision in *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233 (1994). 399 Ill. App. 3d at 70. As in that case, the plaintiffs' claims were barred by ComEd's tariff, so that the circuit court did not have jurisdiction over those claims. *Id*. at 73.

¶ 20   Finally, the appellate court held that the circuit court did not abuse its discretion in denying plaintiffs leave to file a fourth amended complaint. 399 Ill. App. 3d at 76. The proposed fourth amended complaint contained one count alleging that ComEd violated section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)). The appellate court found that jurisdiction over the damage remedies under section 16-125 is in the Commission and not the circuit court. *Id*.

¶ 21                                   ANALYSIS

¶ 22   On appeal, plaintiffs challenge the appellate court's decision affirming the circuit court's dismissal of plaintiffs' third amended complaint and the circuit court's denial of plaintiffs' motion for leave to file a fourth amended complaint. Specifically, plaintiffs argue that the appellate court erred in finding that their claims for money damages fell within the Commission's jurisdiction. Plaintiffs also argue that the lower courts erred in finding that their allegations concerning the life support registry did not state a claim. Finally, plaintiffs argue that the circuit court abused its discretion in denying them leave to file their fourth amended complaint. Plaintiffs do not challenge the dismissal of their claims for injunctive relief.

¶ 23   We first address plaintiffs' claim that the appellate court erred in finding that plaintiffs' third amended complaint was properly dismissed because the circuit court did not have jurisdiction to hear plaintiffs' case. This court reviews decisions granting motions to dismiss pursuant to section 2-619 *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 24   With regard to plaintiffs' legal claims, the appellate court held that the portion of plaintiffs' complaint seeking money damages in essence alleged that ComEd's level of service and restoration efforts following a power outage are substandard. 399 Ill. App. 3d at 69. The appellate court held that those claims directly related to the Commission's rate-setting functions for electrical power services, fundamentally alleging that ComEd should provide its customers a greater level of service, which raised a regulatory question of how ComEd should recover the costs of raising the level of service it provides. *Id.* The appellate court concluded that questions of how ComEd should effectuate an improvement in service and whether ComEd's customers should pay more for the electrical services provided by

ComEd fell squarely within the Commission's jurisdiction over rates. *Id.*

¶ 25 In so holding, the appellate court noted that ComEd's filed tariff specifically stated "that when 'larger, more, or different' services or facilities are requested, the Commission must determine whether the improvements would be 'reasonably and technically feasible' without having a significant adverse impact on the reliability and efficiency of ComEd's overall system." 399 Ill. App. 3d at 70 (quoting Ill. Com. Comm'n No. 10, Orig. Sheet No. 20). Allowing plaintiffs' claims to proceed would place the circuit court in the position of having to determine what constitutes adequate service, as well as whether ComEd fulfilled its responsibilities of providing adequate service, a determination within the Commission's jurisdiction pertaining to rates. 399 Ill. App. 3d at 70.

¶ 26 Finally, the appellate court held that plaintiffs' claims for damages were barred by the decision in *Illinois Bell Switching Station*, 161 Ill. 2d 233, where the court held that the plaintiffs' lawsuit was barred by the defendant's tariff. 399 Ill. App. 3d at 70. The appellate court found that, like the *Illinois Bell Switching Station* case, the plaintiffs' claims in this case were barred by ComEd's tariff, which limited ComEd's liability for any failure to supply electricity, or for interruption or reversal of the supply of electricity. *Id*. at 73.

¶ 27 In this court, plaintiffs argue that the lower courts have now held that virtually any challenge to ComEd's services that result in damages is automatically deemed a challenge to the way that ComEd does business, so that those claims must be adjudicated by the Commission. Plaintiffs maintain, however, that suits for compensatory damages are properly brought in the circuit court.

¶ 28 As noted, in addition to finding that plaintiffs' legal claims fell within the Commission's jurisdiction over rates, the appellate court also found that plaintiffs' legal claims were barred by ComEd's tariff. Setting utility rates is a legislative function. *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 117 Ill. 2d 120, 142 (1987). A tariff is a public document setting forth services being offered, the rates and charges with respect to services, and the governing rules, regulations, and practices relating to those services. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 55 (2004). Section 9-102 of the Act requires public utilities such as ComEd to file tariffs with the Commission. 220 ILCS 5/9-102 (West 2006). Generally a tariff is drafted by the regulated utility, but when the tariff is duly filed with the Commission, the tariff binds the utility and the customer, and governs their relationship. *Adams*, 211 Ill. 2d at 55. Once the Commission approves a tariff, the tariff " 'is a law, not a contract, and has the force and effect of a statute.' " *Id.* (quoting *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.*, 67 Ill. App. 3d 435, 439 (1978)).

¶ 29 Tariff provisions are usually referred to as liability limitations, which reflect the status of public utilities as regulated monopolies whose operations are subject to extensive restrictions, the requirements of uniform, nondiscriminatory rates, and the goal of universal service, achieved through the preservation of utility prices that virtually all customers can afford. *Adams*, 211 Ill. 2d at 56-57. The theory underlying liability limitations is because a public utility is strictly regulated, its liability should be defined and limited so that it may be able to provide service at reasonable rates, and reasonable rates depend in part on a rule limiting liability. *Id*. at 57.

¶ 30　　As noted, in holding that plaintiffs' claims for damages in this case were barred by ComEd's tariff, the appellate court found the decision in *Illinois Bell Switching Station*, 161 Ill. 2d 233, controlling. In that case, a telephone switching station caught fire, and plaintiffs alleged that the fire was due to the negligent or willful failure of Illinois Bell to take fire prevention measures. As a result of the fire, many Illinois Bell customers were without telephone service for approximately a month. Consequently, the customers filed a class action complaint seeking to recover economic losses incurred due to the loss of telephone service, pursuant to section 5-201 of the Act (220 ILCS 5/5-201 (West 1992)). Illinois Bell argued that its filed tariff defined the limits of its liability for interruptions in service, while the plaintiffs argued that the tariff should not bar their claims because the tariff was against public policy and conflicted with provisions of the Act. *Illinois Bell Switching Station*, 161 Ill. 2d at 242-43.

¶ 31　　In rejecting the plaintiffs' argument, the *Illinois Bell Switching Station* court noted that Illinois Bell's tariff listed among its general regulations a service interruption exclusion. The exclusion provided that:

> " 'The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission occurring in the course of furnishing service *** shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, error or defect in transmission occurs. No other liability shall in any case attach to the Company.' Illinois Bell Telephone Company Tariff, Illinois Commerce Commission, No. 5, pt. 1, § 5, par. 3.1." *Illinois Bell Switching Station*, 161 Ill. 2d at 242.

¶ 32　　The plaintiffs argued that the tariff's exculpatory clause barring recovery for consequential damages due to interruptions in service was against public policy. The court rejected that claim, noting that:

> "Bell [was] nowhere charged with the duty to provide completely uninterrupted service. Rather, it is required to provide 'service and facilities which are in all respects adequate, efficient, reliable and environmentally safe and which *** constitute the least-cost means of meeting the utility's service obligations.' (220 ILCS 5/8-401 (West 1992).) Adequate, efficient and reliable service is not tantamount to infallible service. Temporary disruptions may occur without reducing Bell's service to a level less than adequate, efficient or reliable. Thus, the tariff's provision which limits Bell's liability in the event such a disruption in service occurs is not contrary to the Act or the rules." *Id*. at 243-44.

Therefore, the *Illinois Bell Switching Station* court held that the exculpatory language in Illinois Bell's tariff properly limited claims from disruption of service to a rebate of the costs for the missed service, and was not in contravention of the Act, the rules of the Commission, or against public policy. *Id*. at 244.

¶ 33　　In this case, the appellate court noted that at the time of the August 2007 storms at issue, ComEd's tariff on file with the Commission provided, *inter alia*, that:

> "The Company [ComEd] shall not be responsible in damages for any failure to

-8-

supply or deliver electricity, or for interruption, or reversal of the supply or delivery, if such failure, interruption, or reversal is without willful default or negligence on its part, nor for interruptions, by underfrequency relays or otherwise, to preserve the integrity of the Company's system or interconnected systems.

The Customer will be entitled to a reduction in charges for service equal to the Monthly Customer Charge for any billing month in which service to the customer is interrupted for a period of 12 consecutive hours or more due to any of the following conditions: (i) Company equipment malfunction not caused by weather; (ii) Commonwealth Edison employee or its contractor error; (iii) accident involving Commonwealth Edition employee or its contractor; (iv) damage to company equipment caused by Commonwealth Edison employee or its contractor; or (v) overloaded Company distribution equipment not caused by Customer negligence." Ill. Com. Comm'n No. 4, 10th Revised Sheet No. 56.

¶ 34 Based upon *Illinois Bell Switching Station* and the above tariff, the appellate court in this case held that plaintiffs' claims were barred by the tariff. We agree. Like the telephone utility in *Illinois Bell Switching Station*, ComEd also is required to provide "service and facilities which are in all respects adequate, efficient, reliable and environmentally safe and which, consistent with these obligations, constitute the least-cost means of meeting the utility's service obligations." 220 ILCS 5/8-401 (West 2006). As *Illinois Bell Switching Station* recognized, adequate, efficient and reliable service is not tantamount to infallible service. Thus, temporary disruptions may occur without reducing ComEd's service to a level less than adequate, efficient or reliable.

¶ 35 Further, Illinois courts have recognized that where a utility tariff speaks to a specific duty, the tariff may be controlling, but where the tariff does not address a particular situation, the common law applies and a common law duty analysis must be applied. *Adams*, 211 Ill. 2d at 60-61. Here, ComEd's tariff speaks to its duty to supply electricity, specifically providing that ComEd shall not be responsible in damages for any failure to supply electricity or for interruption if the failure, interruption or reversal is without willful default or negligence. The tariff further states that a customer will be entitled to a reduction in charges if his service is interrupted for a period of 12 consecutive hours or more if ComEd's equipment malfunction was not caused by the weather. Because the tariff speaks to power interruptions and failure, and equipment malfunction, the tariff controls.

¶ 36 At oral argument, however, plaintiffs' counsel argued that the tariff does not apply to plaintiffs' negligence claims, as the tariff specifically states that its liability is limited only if the failure or interruption is without willful default or negligence. Plaintiffs' counsel agreed that willful default was not at issue, as the complaint did not allege willful default. It is clear, however, that even though couched in terms of negligence, the basis for the entirety of plaintiffs' complaint, including the negligence claim, is an equipment malfunction causing a power outage that was precipitated by the weather. Plaintiffs' complaint contains the following factual allegations:

"1. *** [O]n or about August 23, 2007 and thereafter, COMED failed to provide, and to timely restore power to Plaintiffs and other customers in Illinois including

-9-

Cook County; in total, on information and belief more than 30,000 ComEd customers in Illinois, including Plaintiffs, in the wake of the August 2007 storm ***;

* * *

7. On or about August 23, 2007, a storm–which was, incidentally, reasonably predictable and foreseeable–affected parts of Illinois including Cook County and those parts where Plaintiffs reside.

* * *

12. The storms of August 2007 precipitated an interruption of power in excess of 30,000 ComEd customers, including Plaintiffs[,] and ComEd did not restore their power within 24 hours.

* * *

30. Plaintiff Resnick was without power for several days following the August 23, 2007 Chicago area storm where, in Wilmette, Illinois literally dozens of inadequately maintained power lines were damaged ***."

¶ 37    In addition, plaintiffs define the putative class as "Any and all persons and entities located in the State of Illinois, that suffered damages as a result of electric power outages or interruptions from August 23, 2007 through the date of judgment."

¶ 38    The tariff specifically exempts from damage claims equipment malfunctions caused by weather. As noted, although plaintiffs attempt to state a claim for negligence, their claims are entirely based upon equipment malfunctions caused by weather. Because plaintiffs' complaint implicates the provision of ComEd's tariff, the tariff controls according to its terms and bars plaintiffs' third amended complaint. Therefore, the appellate court properly affirmed the dismissal of that complaint with prejudice.

¶ 39    Even assuming, *arguendo*, that plaintiffs' negligence claim was not barred by ComEd's tariff, the appellate court correctly held that the claim was properly dismissed because jurisdiction of the complaint lies in the Commission and not the circuit court.

¶ 40    Our determination of whether the appellate court properly held that the Commission had jurisdiction over plaintiffs' third amended complaint requires an examination of the role of the Commission with regard to public utilities. The Commission exists to maintain a balance between the rates charged by utilities and the services performed. *Village of Apple River v. Illinois Commerce Comm'n*, 18 Ill. 2d 518, 523 (1960). It has long been recognized that "in matters relating to services and rates of utilities technical data and expert opinion, as well as complex technological and scientific data, make it essential that the matter be considered by a tribunal that is itself capable of passing upon complex data." *Id.* The Commission is to determine that a utility's rates are just and reasonable and that its services are adequate. *Id.* Thus, the legislature has given the Commission broad powers, so that the Commission on its own initiative can promulgate orders, rules or regulations fixing adequate service standards and requiring adequate facilities. *Id.*

¶ 41    The Commission's exclusive jurisdiction over rates is set forth in section 9-252 of the Act, which provides:

"When complaint is made to the Commission concerning any rate or other charge of

-10-

any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

   ***

All complaints for the recovery of damages shall be filed with the Commission within 2 years from the time the produce, commodity or service as to which complaint is made was furnished or performed, and a petition for the enforcement of an order of the Commission for the payment of money shall be filed in the proper court within one year from the date of the order ***." 220 ILCS 5/9-252 (West 2006).

It has long been recognized that the "evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such reparation until the commission has heard a claim therefor." *Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm'n*, 304 Ill. 312, 317 (1922).

¶ 42    As the appellate court noted, if a claim is for reparations, jurisdiction is in the Commission, while jurisdiction of an action for civil damages lies in the circuit court. 399 Ill. App. 3d at 68. Our appellate court has explained that a claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff. *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004).

¶ 43    In contrast to the Commission's jurisdiction, the jurisdiction of the circuit courts for violations of the Act is set forth in section 5-201 of the Act, which states that:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2006).

¶ 44    Plaintiffs characterize their complaint as a suit for compensatory damages that is properly brought in the circuit court pursuant to section 5-201. Plaintiffs point to the damages alleged in their complaint, that plaintiffs and putative class members suffered personal injury, property damage and financial damages, including the loss of use of property, and costs of repair and replacement of property. Plaintiffs alleged that plaintiffs Resnick and Sheffler suffered damage to their basement and personal property, house, appliances, and food, had to seek alternative living arrangements, and had to hire someone to repair the damage.

Consequently, plaintiffs contend that their claims seeking legal damages were properly before the circuit court pursuant to section 5-201.

¶ 45    In support, plaintiffs note that in a similar case, *Village of Deerfield v. Commonwealth Edison Co.*, 399 Ill. App. 3d 84, 89 (2009), the Appellate Court, Second District, held that the circuit court did have jurisdiction over the plaintiff's claims because the complaint did not allege excessive or discriminatory rates, but rather alleged deficient performance by ComEd, which the plaintiff attacked through a number of theories, including contract, tort and violation of the Public Utilities Act.

¶ 46    At issue in the *Village of Deerfield* case were two counts of the plaintiff Village of Deerfield's complaint against ComEd: count I, titled "Breach of Contract," which alleged that chronic electrical outages occurred within the village as a result of various breaches of ComEd's duties under a franchise agreement; and count III, titled "Civil Damages for Violation of Public Utilities Act," which alleged the existence of a statutory duty and a willful violation of that duty. *Id*. at 85. Count III sought class certification for all ComEd customers in the village, and alleged that potential class customers suffered damages "such as 'spoiled food, purchase of electric generators to deal with [ComEd's] unreliable service, property damage, temporary housing, [and] extra municipal and policing services.' " *Id*. at 85-86.

¶ 47    The circuit court in *Village of Deerfield* dismissed the plaintiffs' complaint with prejudice, finding that the Commission had exclusive jurisdiction over the dispute, and that the third count of plaintiff's complaint was barred by *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982). *Village of Deerfield*, 399 Ill. App. 3d at 86.

¶ 48    Upon review, the appellate court noted that the question of jurisdiction generally turns on the nature of the relief sought, so if a plaintiff seeks ordinary civil damages, the court system has subject matter jurisdiction. *Id*. at 89. In contrast, the Commission has exclusive jurisdiction over claims that rates are excessive or discriminatory. *Id*. at 87. The appellate court held that the circuit court did have jurisdiction over the Village of Deerfield's complaint, as the complaint did not allege excessive or discriminatory rates, but rather alleged deficient performance by ComEd. *Id*. at 89. The court held, however, that even though the circuit court had original jurisdiction of the plaintiff's complaint, the Commission had primary jurisdiction. *Id*. at 93. Therefore, the appellate court held that the circuit court should stay further proceedings, while retaining jurisdiction, so that the Commission could consider the case. *Id.*

¶ 49    In a supplemental opinion issued upon denial of rehearing, the *Village of Deerfield* court acknowledged the appellate court's decision in this case, but stated that it did not find the appellate court's opinion persuasive. *Id.* at 98. The court also questioned whether the legislature could remove from the circuit court's jurisdiction common law tort and contract claims against ComEd, even if cast as a claim for reparations under the Act. *Id*. The appellate court in this case likewise declined to follow the court's analysis in *Village of Deerfield*, reiterating its finding that the complaint before it implicated rates, which is within the Commission's jurisdiction. 399 Ill. App. 3d at 77.

¶ 50    As both the appellate court in this case and the *Village of Deerfield* courts recognized,

-12-

courts focus on the nature of the relief sought rather than the basis for seeking relief in determining whether an action falls within the jurisdiction of the Commission. 399 Ill. App. 3d at 68; *Village of Deerfield*, 399 Ill. App. 3d at 89. The appellate court in this case held that the relief sought by plaintiffs was predicated on allegations that ComEd was not providing adequate service under the Act. We agree. Although plaintiffs point to their request for damages as evincing the fact that their complaint falls outside the Commission's jurisdiction, it is clear that the relief sought by plaintiffs goes directly to ComEd's service and infrastructure, which is within the Commission's original jurisdiction.

¶ 51 With regard to duty, plaintiffs' negligence claim alleged that ComEd had a duty to: "timely restore power (e.g. within 24 hours); to prevent controllable interruptions of power; to provide adequate, efficient, reliable, just, reasonable, and environmentally safe service; to promote the safety, health, comfort and convenience of its customers; and to properly maintain, record and publicize a Life Support Registry."

¶ 52 Plaintiffs then allege that ComEd breached its duty when it negligently acted or failed to act in that it:

"(a) failed to timely restore power to Plaintiffs and Class members homes; (b) failed to prevent controllable interruptions of power to Plaintiffs and the members of the Class; (c) failed to provide adequate warning to Plaintiffs and the members of the Class prior to the power outage; (d) failed to immediately and adequately prepare and/or maintain its facilities, personnel and back-up electric companies so as to prevent controllable interruptions of power and timely restore power; (e) failed to properly repair and maintain power infrastructure (e.g., lines and equipment connected to each of Plaintiffs' residences); (f) failed to implement an adequate company-wide manpower planning process for outages and repair, despite knowledge of potential for storms on a par with that of August 2007; (g) failed to adequately maintain system growth and refurbishment of power equipment; (h) failed to provide adequate, efficient, reliable, and environmentally safe services and facilities; (i) failed to promote safety, health, comfort and convenience of its patrons, customers, and the public; and (j) failed to properly, adequately and timely restore power for persons in the Life Support Registry, and, moreover, failed to give priority to such persons including Plaintiffs Debra and Jason Sloan."

¶ 53 Thus, as the appellate court held, the nature of the relief sought by plaintiffs is compensation for ComEd's allegedly inadequate service, which directly relates to the Commission's rate-setting functions for electrical power services. That rates and service are inextricably tied together was recognized more than 50 years ago in *Village of Apple River*, 18 Ill. 2d at 523, when the court found that the Commission exists to maintain a balance between the rates charged by utilities and the services performed. The *Village of Apple River* court observed that it is essential that the Commission consider matters relating to services and rates of utilities, given the complex data underlying those matters. *Id*. The court therefore held that the Commission is to determine that a utility's rates are just and reasonable and that its services are adequate. *Id*. As the appellate court in this case recognized, allowing plaintiffs' claims to proceed in the circuit court would place the circuit court in the position of assessing what constitutes adequate service, and whether ComEd has fulfilled its

responsibility of providing adequate service. 399 Ill. App. 3d at 70.

¶ 54     As indicated, however, there is tension between the decision in this case and the *Village of Deerfield* decision. The *Village of Deerfield* court narrowly interpreted reparations as limited to claims of excessive or discriminatory rates, ultimately concluding that the plaintiff's complaint in that case did not allege excessive or discriminatory rates, but rather deficient performance by ComEd. *Village of Deerfield*, 399 Ill. App. 3d at 89. The court therefore held that the relief sought was not reparations for an illegal rate, so that the circuit court had jurisdiction of the plaintiffs' complaint.

¶ 55     Neither party in *Village of Deerfield* filed an appeal from that decision, and the decision does not set forth in detail the specific allegations of the plaintiffs' complaint in that case. Therefore we will not address the appellate court's ultimate conclusion that the Village of Deerfield's complaint did not seek reparations. However, we find that the *Village of Deerfield* court erred in narrowly interpreting reparations as excluding any claims concerning service. As was held in the *Village of Apple River* decision, the Commission "is to determine that the rates are just and reasonable and that the services are adequate." *Village of Apple River*, 18 Ill. 2d at 523. Consequently, complaints concerning the adequacy of ComEd's services fall within the jurisdiction of the Commission and fall within the rubric of "reparations."

¶ 56     To the extent that the *Village of Deerfield* decision stands for the proposition that a challenge to the adequacy of ComEd's service can never be considered reparations, we overrule that portion of the decision. Where, as in this case, a plaintiff's complaint is based upon allegations concerning ComEd's infrastructure and its provision of electrical services, and seeks relief based upon systemic defects in the provision of electrical services or the repair of those services when a power outage occurs, that complaint seeks reparations and is within the exclusive jurisdiction of the Commission.

¶ 57     Plaintiffs next argue that the lower courts erred in dismissing their claims concerning the life support registry with prejudice, asserting that they have stated a claim pursuant to the Consumer Fraud Act. The life support registry is set forth in section 8-204 of the Act. That section provides:

> "Every public utility company which furnishes electricity to residential customers shall (a) maintain a registry of those individuals who are dependent on an electrically operated respirator, dialysis machine or any other electrically operated life-support equipment ***." 220 ILCS 5/8-204 (West 2006).

¶ 58     Plaintiffs alleged that ComEd:

> "failed to give priority to restore power of persons signed-up in its Life Support Registry despite the fact that ComEd has conceded that the first priority in restoring power is life safety. *** ComEd, while collecting Plaintiff Sloan's name for the Life Support Registry, did nothing to protect his interests or those of the Life Support Registry Class, in that it effectively treated them, e.g., in the wake of the August 23, 2007 power outage, in materially the same manner as any other ComEd customer in the event of an outage or otherwise."

¶ 59     Plaintiffs' Consumer Fraud Act claim alleged that ComEd knew or should have known

that it failed to sufficiently establish policies and procedures to prevent controllable interruptions of power and to timely respond to those interruptions, in order to protect the health, safety, comfort and convenience of its customers, including those on the life support registry. Plaintiffs claimed that ComEd's conduct was unfair in violation of the Consumer Fraud Act because ComEd's conduct "offends public policy, is immoral, unethical, oppressive, unjust, unconscionable and unscrupulous, violates public policy." Plaintiffs further alleged that as a direct result of its unscrupulous conduct, ComEd "has caused Plaintiffs' and Class members' residences to sustain damage due to ComEd's failure to prevent controllable interruption of power, timely restore power to their residences (and businesses), and/or restore power Life Support Registry customers in priority fashion." Plaintiffs assert that rather than invest in adequate resources to perform its duties, ComEd enriched its principals and managers.

¶ 60    In affirming the dismissal of plaintiffs' third amended complaint, the appellate court did not specifically address plaintiffs' Consumer Fraud Act claims. In this court, plaintiffs contend that they stated a claim that the failure to restore power to life support registry customers caused damages to the Sloan plaintiffs in violation of public policy and the Consumer Fraud Act. Plaintiffs argue that a practice can offend public policy in violation of the Consumer Fraud Act if the practice violates a standard of conduct set out by existing statute or common law doctrine. Plaintiffs claim that by knowingly failing to give priority to customers in its life support registry "in death-threatening situations," ComEd breached its duties under section 8-101 of the Act to promote the safety, health, comfort and convenience of its patrons.

¶ 61    The circuit court dismissed plaintiffs' complaint, including its Consumer Fraud Act claim, pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint, and alleges only defects on the face of the complaint. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 423 (1999). The critical inquiry in deciding a section 2-615 motion to dismiss is whether the allegations of the complaint, considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Id*. at 424. A cause of action will be dismissed on the pleadings only if it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Id*. This court reviews a circuit court's ruling on a section 2-615 motion to dismiss *de novo*. *Id*.

¶ 62    The elements of a claim under the Consumer Fraud Act are:

> "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).

Recovery may be had for unfair as well as deceptive conduct. *Id*. In measuring unfairness, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id*. at 417-18.

¶ 63    Although plaintiffs use the words "immoral, unethical, oppressive, unjust,

unconscionable and unscrupulous" to describe ComEd's conduct, plaintiffs have not and cannot allege a deceptive act or practice, or unfair conduct, by ComEd. Plaintiffs argue that they have alleged unfairness because ComEd's practices offend public policy. Specifically, plaintiffs argue that ComEd was obligated pursuant to section 8-101 of the Act to promote the safety and health of its patrons per the public policy of the state and, presumably, violated that obligation in failing to give restoration priority to customers in the life support registry.

¶ 64       There is no merit to this claim. Section 8-101 provides that a public utility "shall furnish, provide, and maintain such service instrumentalities, equipment, and facilities as shall promote the safety, health, comfort, and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just, and reasonable." 220 ILCS 5/8-101 (West 2006). This broad public policy, however, does not impose a duty on ComEd to assign priority in power restoration to those listed on the life support registry. Indeed, even section 8-204 of the Act, which concerns the life support registry, does not require ComEd to use the registry to assign priority to households on the registry in its power restoration efforts. Plaintiffs do not allege any specific public policy requiring ComEd to give priority to life support registry households in restoring power.

¶ 65       As an aside, we note that the record in this case details the difficulty in requiring ComEd to assign priority to life support registry households. In response to the plaintiffs' petition for a temporary restraining order or a preliminary injunction, ComEd submitted the affidavits of Timothy McGuire and Phyllis Batson. McGuire's affidavit stated that he is the vice president of Construction and Maintenance for ComEd. McGuire testified that ComEd prioritizes restoration with the highest priorities for restoration going to critical institutions such as hospitals, police and fire departments, and urgent care centers, followed by senior citizen facilities and high rise buildings. McGuire also testified that basing power restoration on the life support registry would be inefficient and dangerous, as ComEd would be required to identify the needs of many isolated individual customers across a very large geographic area.

¶ 66       Phyllis Batson, the vice president of Customer Contact for ComEd, testified that ComEd uses the life support registry to identify customers who are on life support systems before their electrical services are disconnected for nonpayment, to forewarn the customers of possible planned power interruptions, and to help local emergency services identify those on life support systems. As of July 2007, there were approximately 4,900 persons throughout ComEd's service area who were listed on the life support registry.

¶ 67       Plaintiffs' Consumer Fraud Act claim fails for the additional reason that plaintiffs cannot allege that ComEd intended that plaintiffs rely on its purportedly unfair conduct in not giving restoration priority to those on its life support registry. In fact, it is clear from plaintiffs' complaint that ComEd specifically notified plaintiff Sloan that her presence on the life support registry did not give her priority in restoration services. Attached as exhibit A to plaintiffs' first amended complaint, which was incorporated by reference into the third amended complaint, is a June 14, 2007, letter from ComEd to Debbie Sloan notifying her that the addition of her account to the life support registry "Does not guarantee uninterrupted electric service" and "Does not provide priority restoration of your electric service when an interruption occurs." Consequently, plaintiffs cannot allege that ComEd intended plaintiffs

to rely on an alleged public policy to give power restoration priority to life support registry households.

¶ 68    Plaintiffs cannot state a claim against ComEd for violation of the Consumer Fraud Act. Accordingly, we find that the appellate court properly affirmed the circuit court's dismissal of the Consumer Fraud Act claim with prejudice.

¶ 69    Finally, plaintiffs argue that the lower courts erred in denying them leave to file their fourth amended complaint. The decision to grant a motion to amend pleadings is within the discretion of the circuit court, and a reviewing court will not reverse the circuit court's decision absent an abuse of discretion. *Board of Directors of Bloomfield Club*, 186 Ill. 2d at 432. This court applies four factors in determining whether the circuit court properly denied a party's motion to amend. This court considers whether: (1) the proposed amendment would cure the defective pleading; (2) the proposed amendment would surprise or prejudice the opposing party; (3) the proposed amendment was timely filed; and (4) the moving party had previous opportunities to amend. *Id*.

¶ 70    Plaintiffs' proposed fourth amended class action complaint contained one count alleging a violation of section 16-125 of the Act (220 ILCS 5/16-125 (West 2006)). The fourth amended complaint sought damages pursuant to sections 16-125(e) and (f) of the Act.

¶ 71    The circuit court held that the legislature intended the Commission to have jurisdiction of claims under section 16-125. The appellate court agreed, holding that "[o]ur review of section 16-125 of the Act leads us to the conclusion that the legislature intended for the Commission to have jurisdiction over the damages remedies under the section." 399 Ill. App. 3d at 75.

¶ 72    Section 16-125 provides, in pertinent part:

"(e) In the event that more than 30,000 customers of an electric utility are subjected to a continuous power interruption of 4 hours or more that results in the transmission of power at less than 50% of the standard voltage, or that results in the total loss of power transmission, the utility shall be responsible for compensating customers affected by that interruption for 4 hours or more for all actual damages, which shall not include consequential damages, suffered as a result of the power interruption. *** A waiver of the requirements of this subsection may be granted by the Commission in instances in which the utility can show that the power interruption was a result of any one or more of the following causes:

(1) Unpreventable damage due to weather events or conditions.

* * *

(f) In the event of a power surge or other fluctuation that causes damage and affects more than 30,000 customers, the electric utility shall pay to affected customers the replacement value of all goods damaged as a result of the power surge or other fluctuation unless the utility can show that the power surge or other fluctuation was due to one or more of the following causes:

(1) Unpreventable damage due to weather events or conditions.

* * *

(h) Remedies provided for under this Section may be sought exclusively through the Illinois Commerce Commission as provided under Section 10-109 of this Act. ***

(i) The provisions of this Section shall not in any way diminish or replace other civil or administrative remedies available to a customer or a class of customers." 220 ILCS 5/16-125 (West 2006).

¶ 73   The appellate court noted that section 16-125(h) of the Act vests jurisdiction in the Commission for actions seeking damage remedies under section 16-125. 399 Ill. App. 3d at 75. Accordingly, because the Commission has jurisdiction over the damages remedies provided in section 16-125, the circuit court did not abuse its discretion in denying plaintiffs' motion to amend their complaint to seek damages pursuant to section 16-125 of the Act. *Id*. at 76.

¶ 74   On appeal, plaintiffs argue that the appellate court erred in failing to read subsection (i) of section 16-125 along with subsection (h). Plaintiffs claim that subsection (i), which states that the provisions of section 16-125 "shall not in any way diminish or replace other civil or administrative remedies available," read with subsection (h), which provides that remedies under section 16-125 "may be sought exclusively through" the Commission, establishes that a consumer may pursue section 16-125 relief through the Commission *in addition to* the circuit court. Plaintiffs read "may" in subsection (h) as allowing a consumer to bring his section 16-125 claim either before the Commission or the circuit court.

¶ 75   We disagree with plaintiffs' interpretation of section 16-125. It is well settled that the primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). The plain language of the statute is the most reliable indication of legislative intent, and when the language of the statute is clear, it should be applied as written without resort to aids or tools of interpretation. *Id*. This court will not depart from the plain language of the statute by reading into it exceptions, limitations or conditions that conflict with the legislative intent. *Id*.

¶ 76   Here, the meaning of section 16-125 could not be more clear. Subsection (h) provides that any remedies sought under section 16-125 are to be brought exclusively through the Commission. Subsection (i) merely provides that if a customer has some other cause of action against ComEd, the filing of a claim pursuant to section 16-125 does not preclude that cause of action.

¶ 77   As ComEd argues, the word "may" in subsection (h) merely provides a customer with the option of bringing a claim if he chooses, but does not force him to bring a claim. Applying plaintiffs' construction of the word "may" in subsection (h) as providing that a customer can bring a claim before the Commission or before the circuit court would render the word "exclusively" in subsection (h) superfluous. A statute should be construed, if possible, so that no word is rendered meaningless or superfluous. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 368 (2009). Further, as ComEd notes, plaintiffs' construction of subsection (h) would lead to an absurd result by providing that a person may seek a remedy under section 16-125 either before the Commission or the circuit court, but if he chooses to

seek his remedy before the Commission, he may only do so exclusively at the Commission. A court construing the language of the statute will assume that the legislature did not intend to produce an absurd or unjust result. *Hubble v. Bi-State Development Agency of the Illinois-Missouri District*, 238 Ill. 2d 262, 283 (2010).

¶ 78    As the lower courts found, remedies sought pursuant to section 16-125 must be sought exclusively through the Commission. Consequently, the circuit court had no jurisdiction over plaintiffs' proposed fourth amended complaint and, therefore, the proposed amendment would not cure the defective pleading. The appellate court thus correctly held that the circuit court did not abuse its discretion in denying plaintiffs' motion to file a fourth amended complaint seeking damages under section 16-125 of the Act.

¶ 79                                CONCLUSION

¶ 80    For all of the foregoing reasons, we affirm the decision of the appellate court.

¶ 81    Appellate court judgment affirmed.